DONNA J. STICKLER, Widow and Adm'x of the Estate of Harry D. Stickler, Deceased, Plaintiff-Appellee, v. AMERICAN AUGERS, INC., Defendant-Appellant (The Village of Schaumburg *et al.* Defendants-Appellees).

First District (1st Division)    No. 1—97—3368

Opinion filed February 22, 1999.

Matthew J. Egan, of Pretzel & Stouffer, Chartered, of Chicago, for appellant American Augers, Inc.

Paul R. Roth, of Salvi & Schostok, P.C., of Waukegan, for appellee Donna J. Stickler.

Anthony Vero, of Purmal, Cohen & Popko, of Chicago, for appellee Cee-Jay Contractors, Inc.

Michael Resis, of O'Hagan, Smith & Amundsen, LLC., of Chicago, for appellee Blackmore Construction, Inc.

Kevin G. Nedved, of Law Office of Shelmadine A. Miller, of Chicago, for appellee Village of Schaumburg.

Stephen Swofford, of Hinshaw & Culbertson, of Chicago, for appellee Pavia-Marting & Company.

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

Defendant, American Augers, Inc. (Augers), appeals a finding of the circuit court that a settlement agreement between plaintiff and all defendants but Augers was in good faith and further appeals the calculation of the setoff afforded Augers pursuant to section 2(c) of the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/2(c) (West 1996)). We reverse and remand.

Plaintiff, Donna Stickler, filed a wrongful death and survival action against Augers, the manufacturer of an auger that tipped over and crushed plaintiff's decedent, Harry D. Stickler. Plaintiff subsequently amended her complaint adding three other defendants, the Village of Schaumburg, Blackmore Construction, Inc. (Blackmore), and Pavia-Marting & Company (Pavia), all of which had some supervisory authority over the construction project where decedent's fatal accident occurred (collectively, the construction defendants). Augers and the construction defendants filed third-party complaints for contribution against the decedent's employer, Cee-Jay Contractors, Inc. (Cee-Jay). Plaintiff negotiated a settlement with the construction defendants and Cee-Jay wherein plaintiff would release her claims against the settling parties in exchange for Cee-Jay's waiver of its workers' compensation lien of $149,143.91[1] and a combined, structured payment of $550,000. The agreement did not state a specific setoff amount for the nonsettling defendant, Augers. The settlement was contingent upon a finding by the trial court that it was in good faith within the meaning of section 2(c) of the Contribution Act (740 ILCS 100/2(c) (West 1996)).

Augers objected to the settlement, arguing it was in bad faith because it would dismiss all three of the construction defendants in exchange for payment by their common insurer, CNA, of what Cee-Jay was already obligated to pay plaintiff under the Workers' Compensation Act and because it would deprive Augers of its right to obtain contribution from those defendants for an amount commensurate with their liability. Following a hearing, the trial court found the settlement was made in good faith and allowed Augers, as the nonsettling party, a setoff equal to the $699,143.91 actually received.

---

[1]Cee-Jay's worker's compensation lien is statutorily imposed by section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1996)). Under section 5(b), an individual who has received workers' compensation benefits is required to reimburse the employer for the full amount of benefits paid or payable by the employer from any recovery the employee receives from a third party legally responsible for the employee's injuries.

Augers appeals the trial court's finding that the settlement agreement was in good faith and its calculation of the setoff. This court has jurisdiction pursuant to Supreme Court Rule 304(a). 155 Ill. 2d R. 304(a).

■ Initially, we consider whether Augers has standing to appeal the trial court's finding as to the construction defendants. The failure to timely file a claim for contribution against a joint tortfeasor waives any right to object to a settlement by plaintiff. See *Clay v. Pepper Construction Co.*, 205 Ill. App. 3d 1018, 1022-23, 563 N.E.2d 937 (1990). Here, Augers filed a contribution action against Cee-Jay only and not against the construction defendants. Thus, Augers is without standing to object to that portion of plaintiff's combined, structured settlement allocated to the Village of Schaumburg ($25,000), Blackmore ($350,000) or Pavia ($25,000).

Because Augers is without standing to object to plaintiff's settlement with the construction defendants, we consider only whether the trial court erred in finding that plaintiff's settlement with Cee-Jay was in good faith within the meaning of the Contribution Act. In settling with Cee-Jay, plaintiff released her claim against Cee-Jay in exchange for Cee-Jay's waiver of its $149,143.91 workers' compensation lien and $150,000 in cash.

■ First, Augers contends the trial court's finding of good faith must be reversed and remanded because the trial court did not conduct an evidentiary hearing to evaluate the settlement and apportionment. In support, Augers cites *Muro v. Abel Freight Lines, Inc.*, 283 Ill. App. 3d 416, 669 N.E.2d 1217 (1996). Augers' argument is not well taken. In *Muro*, the trial court found that a settlement between Muro and a third-party defendant was in good faith without conducting an evidentiary hearing. This court deemed the good-faith finding "premature" and reversed and remanded the matter "for an evidentiary hearing on the allocation of the settlement proceeds" between Muro's wrongful death and survival claims. 283 Ill. App. 3d at 420.

Here, however, petitions for a good-faith finding contained a detailed explanation of the settlement terms and a request for apportionment of the settlement funds in the ratio of 33.3% for plaintiff's wrongful death action and 66.6% for plaintiff's survival action. Augers objected to a good-faith finding. The trial court conducted a hearing, offered to hear Augers' evidence and allowed the parties to discuss the specifics of the settlement. The parties discussed the allocation of the settlement proceeds between plaintiff's wrongful death and plaintiff's survival actions. The trial court rejected the petitioners' proposed allocation of 66.6% of the settlement amount to plaintiff's survival action because plaintiff's decedent "survived approximately 24, 26

hours," during which time "he was either semi or unconscious, so the pain and suffering was questionable," and stated, "I have given it some thought. I'm not directly from heaven, fellows, I don't know what it would amount to, but I would recommend 75 percent for wrongful death and 25 percent for survival." The plaintiff agreed to this allocation. Accordingly, Augers' first argument is without merit.

■ Next, Augers contends the settlement was not in good faith. A court of review may not reverse the trial court's good-faith determination absent an abuse of discretion. *In re Guardianship of Babb*, 162 Ill. 2d 153, 162, 642 N.E.2d 1195, 1200 (1994). The party challenging the settlement bears the burden of establishing it was made in bad faith by a preponderance of the evidence standard. *Bowers v. Murphy & Miller, Inc.*, 272 Ill. App. 3d 606, 610, 650 N.E.2d 60 (1995).

■ The trial court should not equate the validity of the settlement as between plaintiff and the settling defendant with whether the settlement was in good faith for purposes of the Contribution Act. Rather, the court should conduct a totality of circumstances analysis, considering the present cash value of the settling defendant's workers' compensation liability (*Chaney v. National Steel Corp.*, 272 Ill. App. 3d 850, 651 N.E.2d 731 (1995)), the policy underlying the Contribution Act, which encourages the equitable apportionment of damages (*Bowers*, 272 Ill. App. 3d at 610-11), and the relationship of the parties (*Warsing v. Material Handling Services, Inc.*, 271 Ill. App. 3d 556, 648 N.E.2d 1126 (1995)). If, after considering all the circumstances, the court finds that plaintiff gave the settling defendant a release supported by some nominal consideration without regard to the settling defendant's potential liability or the relationship between the consideration received and the settling defendant's relative culpability, that settlement conflicts with the policy of the Contribution Act and does not satisfy the good-faith requirement of section 2(c). *Bowers*, 272 Ill. App. 3d at 610-11.

■ Here, the trial court found the settlement was in good faith because Stickler had the right "to take the money up front rather than wait for it over an extended period of time"; however, the circumstances of the settlement preponderate against a good-faith finding. It is undisputed that Stickler was statutorily entitled to $735.41 per week in workers' compensation benefits from Cee-Jay, that she had already received $149,143.91 in workers' compensation payments from Cee-Jay, and that such payments would continue for the rest of her life. 820 ILCS 305/5(b) (West 1996). Based upon these undisputed facts, Louis P. Cain, a professor of economics at Loyola University, calculated the present value of Stickler's future workers' compensation benefits as $1,173,317.35 in an affidavit attached to Augers' mo-

tion to reconsider. In addition, the Occupational Safety and Health Agency (OSHA) conducted an investigation and placed full culpability for the accident on Cee-Jay. Thus, the settlement releases Cee-Jay from over a million dollars in statutory liability for consideration of $299,143.91 without regard for the relationship between the consideration received and Cee-Jay's relative culpability.

Further, the settlement shifts the balance of Cee-Jay's statutory liability to Augers. Section 2(c) of the Contribution Act provides that settlement with one or more tortfeasors "reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." 740 ILCS 100/2(c) (West 1996). Section 2(d) of the Contribution Act then releases the settling tortfeasor from contribution liability to the nonsettling tortfeasor. 740 ILCS 100/2(d) (West 1996).

CNA negotiated the instant settlement on behalf of Cee-Jay and the construction defendants, its insureds. Because the settlement states no setoff amount, section 2(c) limits Augers' setoff to $699,143.91 in consideration actually paid. And because $699,143.91 comprises barely 50% of the present value of Cee-Jay's workers' compensation liability, section 2(d) shifts the balance of that liability to Augers while giving a dismissal to the construction defendants.

Because the settlement releases Cee-Jay from liability for relatively nominal consideration without regard for its relative culpability and shifts nearly half of Cee-Jay's statutory liability to Augers while giving a dismissal to the construction defendants, the settlement conflicts with the policy of the Contribution Act, which encourages equitable apportionment of damages. Accordingly, the trial court erred in finding that the settlement was made in good faith for purposes of the Contribution Act. See *Warsing v. Material Handling Services, Inc.*, 271 Ill. App. 3d 556, 560, 648 N.E.2d 1126 (1995) (finding bad faith because $1,000 settlement was grossly disproportionate to settling defendant's "apparent primary liability" and $300,000 insurance coverage, and because plaintiff and settling defendant had a "close personal relationship," all of which suggested agreement was an attempt to shift primary liability to nonsettling defendant).

Cee-Jay relies upon *Muro v. Abel Freight Lines, Inc.*, 283 Ill. App. 3d 416, 669 N.E.2d 1217 (1996), and *Jachera v. Blake-Lamb Funeral Homes, Inc.*, 189 Ill. App. 3d 281, 545 N.E.2d 314 (1989), in support of its argument that the settlement is in good faith. Cee-Jay's reliance is misplaced.

In *Muro*, plaintiff entered into a settlement agreement with one of three primary defendants. The trial court found the agreement to be

fair, reasonable, and in good faith and apportioned 85% of the settlement to plaintiff's wrongful death claim and 15% to the survival action. The plaintiff appealed the trial court's apportionment of the settlement. We reversed and remanded for an evidentiary hearing on the apportionment issue, stating:

> "Settlements are not designed to benefit nonsettling third parties. They are instead created by the settling parties in the interests of these parties. If the position of a nonsettling defendant is worsened by the terms of a settlement, this is the consequence of a refusal to settle." *Muro*, 283 Ill. App. 3d at 420.

In *Jachera,* plaintiff entered into a settlement agreement with one of two primary defendants. The trial court found the agreement to be in good faith and the settling defendant appealed. We affirmed, stating:

> "[T]he [Contribution] Act is intended to protect those who settle from the hardest bargainer who might 'hold the other[ ] [litigants] hostage to its own intransigence.' " *Jachera*, 189 Ill. App. 3d at 287, quoting *Doellman v. Warner & Swasey Co.*, 147 Ill. App. 3d 842, 851, 498 N.E.2d 690 (1986).

*Muro* and *Jachera* are factually distinguishable. Neither involves the Workers' Compensation Act. In both *Muro* and *Jachera*, plaintiffs were able to sue the settling defendants directly and the settling defendants' financial liability and comparative fault were unknown. Here, Stickler was precluded from suing Cee-Jay directly by the Workers' Compensation Act and Cee-Jay's financial liability was determined by the Workers' Compensation Act and its fault by OSHA. Further, *Muro* concerned the apportionment of damages between a wrongful death and a survival claim. Here, we consider whether the entire settlement is in good faith within the meaning of the Contribution Act.

Finally, Augers argues for a setoff equal to Cee-Jay's $1,872,461.26 actual liability (representing the settling defendants' $550,000 combined cash settlement, Cee-Jay's $149,143.91 lien waiver, and the $1,173,317.35 present value of Cee-Jay's future statutory liability as calculated by Augers' expert in its motion to reconsider), rather than the plaintiff's $699,143.91 compensation received. In support, Augers cites *Bowers*, which holds that the public policy favoring equitable apportionment of damages among tortfeasors is equal to the public policy favoring settlement of lawsuits. *Bowers*, 272 Ill. App. 3d at 610, 650 N.E.2d at 611.

Although Stickler had the right "to take the money up front rather than waiting for it over an extended period of time," Augers is entitled to either the right of contribution or a setoff fairly reflecting Cee-Jay's

readily ascertainable liability. Under the facts presented, Augers is denied both.

Absent an agreement of the parties, the court may not credit non-settling parties with a setoff for the future workers' compensation liability. *Branum v. Slezak Construction Co.*, 289 Ill. App. 3d 948, 682 N.E.2d 1165 (1997); 740 ILCS 100/2(c) (West 1996) (limiting setoff to amount stated or amount paid for release, whichever is greater). The court may, however, find that a settlement failing to provide for a fair and adequate setoff was not made in good faith and such is the case here.

Accordingly, we reverse the finding of the circuit court that the settlement agreement was in good faith pursuant to the Contribution Act.

Reversed and remanded for proceedings not inconsistent with this order.

TULLY and GALLAGHER, JJ., concur.