DONNA J. STICKLER, Widow and Adm'x of the Estate of Harry D. Stickler, Deceased, Plaintiff-Appellee, v. AMERICAN AUGERS, INC., Defendant-Appellant and Third-Party Plaintiff-Appellant (Cee-Jay Contractors, Inc., Third-Party Defendant-Appellee).

First District (6th Division)   No. 1—99—3651

Opinion filed September 14, 2001.

Pretzel & Stouffer, Chtrd., of Chicago (Matthew J. Egan, of counsel), for appellant.

Salvi Schostok & Pritchard, of Waukegan (John A. Kornak, of counsel), and Law Offices of David A. Izzo & Associates, of Chicago (Michele H. Harland, of counsel), for appellees.

JUSTICE O'BRIEN delivered the opinion of the court:

American Augers, Inc., appeals the dismissal of its third-party complaint against Cee-Jay Contractors, Inc., seeking contribution. We reverse and remand.

Plaintiff, Donna Stickler, filed a wrongful death and survival action against defendant, American Augers, Inc. (Augers), the manufacturer of an auger that tipped over and crushed plaintiff's decedent, Harry D. Stickler. Plaintiff subsequently amended her complaint adding three other defendants, the Village of Schaumburg, Blackmore Construction, Inc. (Blackmore), and Pavia-Marting & Company (Pavia), all of which had some supervisory authority over the construction project where decedent's fatal accident occurred (collectively, the construction defendants). Augers and the construction defendants filed third-party complaints for contribution against the decedent's employer, Cee-Jay Contractors, Inc. (Cee-Jay). During discovery, plaintiff negotiated a settlement with the construction defendants and Cee-Jay wherein plaintiff would release her claims against the settling parties in exchange for Cee-Jay's waiver of its workers' compensation lien of $149,143.91[1] and a combined, structured payment of $550,000. The agreement did not state a specific setoff amount for the nonsettling defendant, Augers. The settlement was contingent upon a finding by the trial court that it was in good faith within the meaning of section 2(c) of the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/2(c) (West 1996)).

Augers objected to the settlement, arguing it was in bad faith because it would dismiss all three of the construction defendants in exchange for payment by their common insurer, CNA, of what Cee-Jay was already obligated to pay plaintiff under the Workers' Compensation Act and because it would deprive Augers of its right to obtain contribution from those defendants for an amount commensurate

---

[1]Cee-Jay's workers' compensation lien is statutorily imposed by section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 1996)). Under section 5(b), an individual who has received workers' compensation benefits is required to reimburse the employer for the full amount of benefits paid or payable by the employer from any recovery the employee receives from a third party legally responsible for the employee's injuries.

with their liability. Following a hearing, the trial court found the settlement had been made in good faith and allowed Augers, as the nonsettling party, a setoff equal to the $699,143.91 in compensation actually received.

Augers appealed the trial court's finding that the settlement agreement was in good faith and its calculation of the setoff. After Augers initiated its appeal, Cee-Jay presented the workers' compensation portion of the settlement agreement to the Industrial Commission for its review and approval. The Industrial Commission, which was not advised that the settlement agreement was under review in this court, approved the settlement on October 23, 1997.

We reviewed the trial court's finding under the abuse of discretion standard, taking into consideration the entire record, including Cee-Jay's petition for a good-faith finding, which contained a detailed explanation of the settlement terms; Auger's response to the petition; the relevant hearing transcripts; the evidence presented to the trial court, including the then-undisputed estimate as to Cee-Jay's long-term workers' compensation liability; the result of the Occupational Safety and Health Agency's investigation into the cause of the accident; and the practical impact of a good-faith finding upon the remaining defendant. We stated, "[t]he trial court should not equate the validity of the settlement as between the plaintiff and the settling defendant with whether the settlement was in good faith for purposes of the Contribution Act" (*Stickler v. American Augers, Inc.*, 303 Ill. App. 3d 689, 693, 708 N.E.2d 403, 406 (1999)), and found that the trial court erred in finding that the settlement was made in good faith. We reversed the trial court's good-faith finding and its calculation of the setoff and remanded for further proceedings.

The proceedings, findings and orders of the Industrial Commission were not part of the record although the Industrial Commission "Settlement Contract Lump Sum Petition and Order" was attached to a brief.

Cee-Jay did not file a petition for rehearing or a petition for leave to appeal to the supreme court.

Following remand, Cee-Jay filed a motion to dismiss Augers' third-party complaint on the same basis rejected by us, claiming that because the Industrial Commission had approved the settlement our opinion should be ignored. The trial court granted Cee-Jay's motion.

Augers filed a motion for reconsideration and damages pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137) and a motion seeking apportionment and setoff pursuant to our opinion. The trial court denied Augers' motion to reconsider but granted its motion for apportionment and setoff in the amount of $299,143.91—the same

amount we rejected in our earlier opinion. Augers appealed, contending (1) that the trial court erred in dismissing Augers' third-party complaint against Cee-Jay based upon Cee-Jay's settlement with plaintiff, (2) that even assuming dismissal of Augers' third-party complaint against Cee-Jay was not erroneous, the trial court erred in refusing to grant Augers a setoff conforming with our opinion, and (3) that Augers is entitled to recover its costs and fees from Cee-Jay for the instant and prior appeals.

## I

First, the dismissal. On appeal, Augers argues that our earlier opinion is the law of the case and that the trial court erred in dismissing Augers' third-party complaint against Cee-Jay and refusing to grant Augers a setoff in accord with our opinion. Plaintiff and Cee-Jay counter that our earlier opinion is not the law of the case and, thus, was not binding on the trial court because the issue in the present case is different from that decided in the previous appeal. Alternatively, plaintiff and Cee-Jay argue that we should reconsider our previous decision, which they call "palpably erroneous."

■ "The rule of the law of the case is a rule of practice, based on sound policy that, where an issue is once litigated and decided, that should be the end of the matter and the unreserved decision of a question of law or fact made during the course of litigation settles that question for all subsequent stages of the suit." *Continental Insurance Co. v. Skidmore, Owings & Merrill*, 271 Ill. App. 3d 692, 696-97 (1995). Thus, issues raised on appeal are binding and control on remand unless the facts presented are so different as to necessitate a different interpretation. *Bilut v. Northwestern University*, 296 Ill. App. 3d 42, 47, 692 N.E.2d 1327, 1331 (1998).

The issue presented and decided in the previous appeal was whether the trial court abused its discretion in determining that the settlement agreement was made in good faith within the meaning of section 2(c) of the Joint Tortfeasor Contribution Act (740 ILCS 100/2(c) (West 1996)). In ruling on this issue, the trial court and this court had before them Cee-Jay's petition for a good-faith finding, which contained a detailed explanation of the settlement terms; Augers' response to the petition; the relevant hearing transcripts; the evidence presented to the trial court including the then-undisputed estimate as to Cee-Jay's long-term workers' compensation liability; the result of the Occupational Safety and Health Agency's investigation into the cause of the accident; and the practical impact of a good-faith finding upon the remaining defendant. The issue presented in the instant appeal is whether the trial court abused its discretion in determining

that the settlement agreement was made in good faith within the meaning of section 2(c) of the Joint Tortfeasor Contribution Act (740 ILCS 100/2(c) (West 1996)). In ruling on this issue, the trial court had before it the same information as before plus the Industrial Commission's approval of the workers' compensation portion of the settlement agreement. Thus, *the only distinction between the issue and facts presented in the previous appeal and the issue and facts presented in the instant appeal is the Industrial Commission's intervening approval of the settlement agreement. This distinction makes no difference to the good-faith analysis.*

■ The role of the Industrial Commission differs from the role of a trial judge evaluating whether a settlement was made in good faith within the meaning of section 2(c) of the Joint Tortfeasor Contribution Act. The Industrial Commission is not vested with authority to make a good-faith finding. The Illinois Administrative Code outlines the role of the Industrial Commission in reviewing proposed settlement agreements. 50 Ill. Adm. Code ch. II, pt. 7070 (2001). Section 7070.10(b)(2) provides that in cases involving a claim for death benefits, the petitioner shall file a written explanation of how the dependents of the decedent will be supported following the "approval of the appropriateness" of the settlement. 50 Ill. Adm. Code § 7070.10(b)(2) (2001). Further, section 7070.20(b) provides that "[i]n all cases, but particularly those involving either minor Petitioners or minor beneficiaries, the Commission reserves the right to elicit evidence concerning the use to which the proceeds of the settlement are to be put." 50 Ill. Adm. Code § 7070.20(b) (2001). Finally, section 7070.40(a) provides that "[u]pon presentation of Settlement Contracts or Petitions for Lump Sum Settlement, the Commission shall, after hearing or otherwise, either 'approve' or 'reject' the Contract or Petition for Lump Sum Settlement." 50 Ill. Adm. Code § 7070.40(a) (2001). Thus, the Industrial Commission's concern in approving or rejecting a proposed settlement agreement is whether the agreement provides the decedent's dependents with sufficient funds on which to live.

■ In contrast, the trial court's concern in determining whether a settlement agreement was made in good faith within the meaning of the Joint Tortfeasor Contribution Act is whether the agreement provides the nonsettling defendant(s) with a fair and reasonable setoff in light of the parties' estimated fault and potential financial exposure. Thus, as noted in our earlier opinion, the validity of the settlement as between the plaintiff and the settling defendant does not *ipso facto* mean the settlement was made in good faith for purposes of the Contribution Act. *Stickler v. American Augers*, 303 Ill. App. 3d 689, 693, 708 N.E.2d 403, 406 (1999). A settlement agreement may be valid for

the purposes of the Industrial Commission yet not in good faith for purposes of the Joint Tortfeasor Contribution Act. Consequently, the Industrial Commission's approval of the settlement agreement effectively limiting Cee-Jay's liability to the plaintiff to $150,000 does not change our original good-faith analysis. It is Cee-Jay's potential liability to plaintiff *before* the settlement agreement, *not after*, which the court must consider in making its good-faith determination. To hold otherwise would render the good-faith requirement meaningless. Because we settled the good-faith issue in our earlier opinion, the trial court erred in deferring to the Industrial Commission's approval of the settlement rather than abiding by our ruling.

Plaintiff and Cee-Jay's alternative argument that we should reconsider our earlier decision and that the decision was "palpably erroneous" is not well taken. If plaintiff and Cee-Jay had desired reconsideration of our ruling, they should have filed a motion to reconsider within the time permitted by Supreme Court Rule 367 (155 Ill. 2d R. 367); if they had desired review by a higher court, they should have filed a petition for leave to appeal to the Illinois Supreme Court as permitted by Supreme Court Rule 315 (177 Ill. 2d R. 315). Plaintiff and Cee-Jay did neither, and their attempt to avoid our opinion through other procedural means is improper.

■ Strangely, although plaintiff was willing to abide by our earlier decision because it retained Cee-Jay as a third-party defendant and potential source of damages, plaintiff sides with Cee-Jay on this appeal because "a deal is a deal." Thus, at oral argument on this second appeal, counsel for plaintiff contended we should uphold the trial court's second, identical, good-faith finding and calculation of Augers' setoff because to do otherwise would prevent plaintiff from obtaining sufficient damages to "make her whole." Counsel's argument is not well taken. Public policy favors equitable distribution of liability. This public policy is demonstrated in the Joint Tortfeasor Contribution Act by the statutory provision which grants the courts authority to reject a settlement agreement that fails to state a sufficient setoff for nonsettling defendants as not being in good faith. Thus, plaintiff may agree to accept significantly less in damages from one defendant than that to which she is legally entitled so as to receive the money in a lump sum. However, that choice comes with a price. In so doing, the plaintiff forfeits the ability to recover the entire balance of damages otherwise owed by the settling defendant(s) from the nonsettling defendant(s). Accordingly, the courts should not endorse a settlement as being in good-faith for purposes of the Joint Tortfeasor Contribution Act where the practical effect of that settlement is to shift a disproportionally large, and thus inequitable, portion of the settling defendant's liability onto the shoulders of another.

## II

█ Alternatively, Augers argues that the trial court had the authority to grant Augers a proper setoff and that it erred in failing to do so. As we noted in our earlier opinion, "[a]bsent an agreement of the parties, the court may not credit nonsettling parties with a setoff for the future workers' compensation liability" (*Stickler v. American Augers*, 303 Ill. App. 3d at 696, 708 N.E.2d at 408) because section 2(c) of the Joint Tortfeasor Contribution Act limits the setoff to the amount stated or the amount paid for the release, whichever is greater (740 ILCS 100/2(c) (West 1996)). The court may, however, find that a settlement failing to provide for a fair and adequate setoff was not made in good faith. Such was the finding of this court in its earlier opinion. *Stickler v. American Augers*, 303 Ill. App. 3d at 696, 708 N.E.2d at 408. Thus, the absence of a good-faith finding prevents the court from dismissing a third-party's complaint for contribution and, if the parties wish to avoid further litigation, sends them back to the bargaining table, where they must reach an agreement as to a setoff that is acceptable to the court. Cognizant of the prohibition against crediting a nonsettling party with a setoff for future workers' compensation liability *absent an agreement of the parties*, we provided the settling parties guidance as to what would be considered acceptable. We stated, "Augers is entitled to *** a setoff fairly reflecting Cee-Jay's readily ascertainable liability." *Stickler v. American Augers*, 303 Ill. App. 3d at 695-96, 708 N.E.2d at 408.

## III

█ Finally, Augers argues it is entitled to recover its costs and fees from Cee-Jay pursuant to Supreme Court Rule 137. 155 Ill. 2d R. 137. Supreme Court Rule 137 provides, in relevant part:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by exiting law *** and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, *** an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee." 155 Ill. 2d R. 137.

The purpose of the rule is to prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions

based upon unsupported allegations of fact or law. It is not intended to penalize litigants for lack of success; rather, its aim is to restrict litigants who plead frivolous or false matters without any basis in law. *Fischer v. Brombolich*, 246 Ill. App. 3d 660, 616 N.E.2d 743 (1993); *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagon, Inc.*, 250 Ill. App. 3d 149, 621 N.E.2d 77 (1993).

■ Here, Cee-Jay filed its petition for a good-faith finding before requesting approval of the settlement agreement by the Industrial Commission. Augers contested the petition and presented expert evidence to support its position. Plaintiff and Cee-Jay did not object to Augers' calculation of the present value of workers' compensation benefits and did not present expert evidence to contradict the figures provided by Augers' expert. The trial court made a good-faith finding and dismissed Augers' third-party complaint for contribution. Augers filed an appeal and, based upon the evidence in the record, we reversed the trial court's decision and remanded the matter to the trial court for further proceedings.

Rather than filing a petition for rehearing or a petition for leave to appeal to the Illinois Supreme Court, and rather than renegotiating the settlement agreement to include a fair and adequate setoff amount for Augers or proceeding to trial, Cee-Jay presented the trial court with the Industrial Commission's approval of the settlement agreement and filed a new petition for a good-faith finding and dismissal of Augers' third-party complaint for contribution. Aside from the Industrial Commission's approval, Cee-Jay presented no new evidence to the trial court in support of its petition. Counsel for Cee-Jay labeled the earlier case "silly" and accused this court of failing to take into consideration the proposed settlement agreement before the Industrial Commission, which had been attached to plaintiff's brief in the prior appeal but was not a part of the record. Moreover, counsel for Cee-Jay actively encouraged the trial court to ignore our opinion that the settlement agreement was not made in good faith within the meaning of the Joint Tortfeasor Contribution Act and to defer to the Industrial Commission in making its good-faith determination. Adopting Cee-Jay's view that the Industrial Commission's determination as to the validity of the settlement was binding upon it, the trial court again made a good-faith finding and dismissed Augers' third-party complaint for contribution. Augers filed this second appeal.

In this second appeal, plaintiff and Cee-Jay contend our earlier decision was "premature" because we considered the good-faith issue while the settlement agreement was pending before the Industrial Commission, and "palpably erroneous" because it was based upon an "inflated" calculation of the future workers' compensation benefits

owed to decedent's dependents based upon an "illegal double payment." These arguments are not well taken. Even assuming, without agreeing, that our earlier decision was "premature," it was so only because plaintiff and Cee-Jay filed the first petition for good-faith finding before requesting approval of the settlement agreement by the Industrial Commission, and Augers' time to appeal was established by law. Further, even assuming, without agreeing, that our earlier decision was "palpably erroneous," it was so only because plaintiff and Cee-Jay did not object to Augers' calculation of the present value of workers' compensation benefits and did not present expert evidence to contradict the figures provided by Augers' expert.

If plaintiff and Cee-Jay felt our earlier decision was in error, they could have filed a petition for rehearing or a petition for leave to appeal to the Illinois Supreme Court. Having failed to do so, it was improper for plaintiff and Cee-Jay to force Augers to relitigate the matter before the trial court, and again before this court. Because the second petition for a good-faith finding and dismissal of Augers' third-party complaint for contribution was not well grounded in fact or warranted by existing law, and in particular not warranted by the law of the case, and because the second petition was interposed in an improper attempt to have the trial court disregard our earlier opinion, we grant Augers' request for Rule 137 sanctions against Cee-Jay.

Reversed and remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

CAMPBELL, P.J., and GALLAGHER, J., concur.