NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190147-U

NO. 4-19-0147

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 23, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| SHELLEY D. SASSANO, | ) | Appeal from the |
| Plaintiff, | ) | Circuit Court of |
| v. | ) | Macon County |
| TRAVIS B. NELSON and ARCHER DANIELS | ) | No. 13L11 |
| MIDLAND COMPANY, | ) | |
| Defendants and Third-Party Plaintiffs- | ) | |
| Appellees, | ) | |
| v. | ) | |
| RANI CHOVATIYA, MD, PAIN CONSULTANTS, | ) | |
| LLC, SHANE FANCHER, MD, and ST. MARY'S | ) | |
| HOSPITAL, DECATUR, ILLINOIS, | ) | |
| Third-Party Defendants | ) | |
| (Rani Chovatiya, MD, and St. Mary's Hospital, Decatur, | ) | Honorable |
| Illinois, Third-Party Defendants-Appellants). | ) | Rodney Forbes, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) Because nonsettling third-party defendants waived their rights to contribution under the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 2018)), they lack standing to appeal the trial court's finding that the settlement between plaintiff and the settling defendants was entered in good faith within the meaning of the Contribution Act.

(2) Third-party defendants' challenges to the trial court's denials of motions to consolidate the underlying action with a separate cause of action plaintiff filed against third-party defendants are moot.

¶ 2     Plaintiff, Shelley D. Sassano, brought an action against defendants—Travis B.

Nelson, individually, and Archer Daniels Midland Company (ADM), a Delaware Corporation—alleging damages resulting from a motor vehicle accident on September 20, 2011. Nelson and ADM then filed a third-party complaint for the equitable apportionment of damages against third-party defendants, St. Mary's Hospital, Decatur (St. Mary's Hospital), and Dr. Rani Chovatiya, alleging they were negligent in subsequently providing medical care to plaintiff on August 22, 2014. Ultimately, plaintiff entered into a settlement agreement with Nelson and ADM for $175,000—$5000 of which the parties agreed would be allocated "for damages arising from August 22, 2014[,] through present." Plaintiff filed a motion for a good-faith settlement finding, which the trial court granted over the objections of St. Mary's Hospital and Dr. Chovatiya. They appeal, arguing the court erred by (1) granting plaintiff's motion for a good-faith finding where only 2.86% of the total settlement value was allocated to alleged injuries occurring after the claimed medical negligence and (2) denying St. Mary's Hospital's and Dr. Chovatiya's motions to consolidate the underlying case (Macon County case No. 13-L-11) with a medical malpractice case plaintiff later filed against St. Mary's Hospital, Dr. Chovatiya, and others (Macon County case No. 15-L-118). We dismiss the appeal based on appellants' lack of standing to challenge the court's good-faith settlement finding and because their challenge to the court's denial of consolidation is moot.

¶ 3                                   I. BACKGROUND

¶ 4            On September 20, 2011, plaintiff and Nelson, an ADM employee, were involved in a motor vehicle collision. In October 2013, plaintiff filed a first amended complaint against both Nelson and ADM in Macon County case No. 13-L-11 (hereinafter, case No. 13-L-11), alleging Nelson's negligence caused the accident. Plaintiff's claims against ADM were based on the

doctrine of *respondeat superior*. She alleged damages, including severe and permanent physical injuries, past and future pain and suffering, past and future loss of enjoyment of a normal life, past and future lost wages, and past and future medical expenses.

¶ 5 Following the motor vehicle accident, plaintiff sought medical treatment from Pain Consultants, LLC, (Pain Consultants) for her injuries and received treatment from various physicians employed or retained by Pain Consultants, including Dr. Shane Fancher and Dr. Chovatiya. In December 2012, she underwent a radiofrequency ablation (RFA) procedure to manage pain in her cervical spine. While her cause of action against Nelson and ADM was pending, Dr. Fancher recommended a repeat RFA procedure. On August 22, 2014, Dr. Chovatiya performed a second RFA procedure on plaintiff at St. Mary's Hospital. Ultimately, plaintiff claimed Dr. Chovatiya negligently performed that procedure and caused her to suffer additional injuries.

¶ 6 In October 2015, Nelson and ADM filed a third-party complaint in case No. 13-L-11 against Dr. Chovatiya and St. Mary's Hospital, as well as other third-party defendants who are not parties to this appeal—Pain Consultants, Dr. Fancher, and Hospital Sisters Health System. Nelson and ADM alleged that Dr. Chovatiya was medically negligent because although the August 2014 procedure was ordered and represented as a repeat of the December 2012 RFA procedure, Dr. Chovatiya "performed a different procedure which caused a complete or nearly complete lesion of the hypoglossal and accessory nerves at the level of Cervical 1, which was one level higher and more anterior when compared to the [December 2012] procedure." They alleged the third-party defendants' negligence caused injuries to plaintiff, including "a complete or nearly complete lesion to the hypoglossal nerve and 11th accessory nerves limiting or affecting [plaintiff's] use of her tongue and abduction of her right arm." They asserted that in the event judgment was entered

against them and in plaintiff's favor in the underlying case, they were entitled to indemnity for all damages equitably apportioned to the claimed medical negligence.

¶ 7        In November 2015, plaintiff brought a separate cause of action for medical negligence, in Macon County case No. 15-L-118 (hereinafter, case No. 15-L-118), against Dr. Chovatiya, St. Mary's Hospital, and other defendants who are not parties to this appeal—Medical Doctor Associates, LLC, and Pain Consultants. Plaintiff alleged that after sustaining neck injuries in the motor vehicle accident caused by Nelson's negligence, she sought pain management services from Pain Consultants, which ultimately resulted in Dr. Chovatiya's performance of the August 2014 procedure. Like Nelson and ADM, plaintiff asserted that although the August 2014 procedure had been ordered and represented as a repeat of the December 2012 RFA procedure, Dr. Chovatiya "performed a different procedure which caused a complete or nearly complete lesion of the hypoglossal and accessory nerves at the level of cervical 1, which was one level higher and more anterior when compared to the [December 2012] procedure." Plaintiff's claim against St. Mary's Hospital was based on the theory of apparent agency. She maintained the claimed medical negligence affected the use of her tongue and abduction of her right arm. Plaintiff also alleged damages including "past and permanent" pain and suffering, past and future disability and loss of enjoyment of a normal life, past and future medical expenses, loss of wages, and permanent disfigurement.

¶ 8        Dr. Chovatiya and St. Mary's Hospital both sought to consolidate plaintiff's personal injury case, case No. 13-L-11, which involved them as third-party defendants, with her medical malpractice case, case No. 15-L-118. In June 2016, the trial court denied the requests to consolidate the two cases. In 2018, Dr. Chovatiya and St. Mary's Hospital renewed their motions to consolidate. Again, the court denied the motions. Specifically, in August 2018, the court entered a

- 4 -

written order finding "that consolidation would affect a substantial right held" by plaintiff; in the two cases, the parties alleged separate and distinct causes of action and made different jury demands; and the 2013 personal injury case involved three parties that were not involved in the 2015 medical malpractice case. The court concluded that consolidation of the cases for trial created "a strong potential for jury confusion" and that while some of the claims in the two cases involved the same parties, the convenience from consolidation was not so great that the cases could not be tried separately.

¶ 9   In January 2019, in case No. 13-L-11, plaintiff filed a motion for a good-faith settlement finding pursuant to the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 2018)), alleging she had reached a settlement with Nelson and ADM. Under the terms of the agreement, Nelson and ADM agreed to pay plaintiff $175,000, which the parties allocated as follows:

> "i. $170,000.00 for all medical expenses, lost wages, pain and suffering, and loss of enjoyment of a normal life up to and including August 21, 2014, representing injuries and damages solely caused by the September 20, 2011[,] motor vehicle collision; and
>
> ii. $5,000.00 for all medical expenses, lost wages, pain and suffering, and loss of enjoyment of a normal life from August 22, 2014[,] to the present, representing injuries and damages caused by the August 22, 2014[,] RFA procedure[.]"

¶ 10   To her motion, plaintiff attached documents containing medical opinions in the case, which she asserted showed "a substantial dispute as to whether [her] RFA treatment, including the August 22, 2014[,] RFA procedure[,] was reasonable and necessary treatment, and if so,

whether the treatment was related to any condition caused by the September 20, 2011[,] motor vehicle collision." She also attached exhibits to her motion that set forth summaries of her medical bills both prior to and after the August 2014 RFA procedure. According to those exhibits, plaintiff's medical bills for treatment she received after the September 2011 motor vehicle collision and before the August 2014 RFA procedure totaled $78,352.58. After the August 2014 procedure and "to present," she alleged medical bills totaling $36,495.31.

¶ 11 Both Dr. Chovatiya and St. Mary's Hospital filed objections to plaintiff's motion for a good-faith settlement finding. Neither party objected to the amount of the settlement between plaintiff and defendants Nelson and ADM. Rather, they objected to the proposed allocation of the settlement proceeds. Dr. Chovatiya asserted the proposed allocation was unfair and unreasonable and "an attempt to prejudicially limit her ability to claim a set-off against any potential verdict rendered against her." She asked the trial court to "deny" the proposed allocation and order that she "be permitted to claim a set-off for the full amount of the settlement."

¶ 12 St. Mary's Hospital argued that plaintiff failed "to provide any evidence why an apportionment of less than 3% of the total overall sum should be allocated to the [m]edical [m]alpractice action." It also argued that such an allocation was contrary to plaintiff's own deposition testimony regarding her damages following both the motor vehicle accident and the second RFA procedure. St. Mary's Hospital argued that given the proposed allocation, there was a substantial risk of double recovery for plaintiff if she was ultimately successful in the medical negligence case. For relief, it asked the trial court to approve the settlement in the amount of $175,000, dismiss the case with prejudice, but deny plaintiff's motion for a good-faith finding "with regard to apportionment only."

¶ 13 Following a hearing in February 2019, the trial court granted plaintiff's motion and entered a good-faith settlement finding. In its docket entry, dated February 4, 2019, the court noted the information it had considered in reaching its determination and stated as follows:

"[T]he court finds that the settling parties have presented a *prima facie* case that the proposed settlement is made in good faith. Further, the court finds that the objecting parties have failed to prove by a preponderance of the evidence that the settlement was entered into in the absence of good faith. The objecting parties have not demonstrated that the settling parties engaged in wrongful conduct, collusion, or fraud. Further, having considered the totality of the circumstances as set forth above, the court finds that the disparity in the allocation of the settlement proceeds, does not, in itself, demonstrate that the parties acted in bad [faith].

The court finds that the settlement and allocation is made in good faith."

¶ 14 The same month, Nelson and ADM filed a motion to dismiss, asserting their third-party complaint should be dismissed as a matter of right. They attached a stipulation they entered into with plaintiff, agreeing that all claims in case No. 13-L-11 should be dismissed with prejudice. On February 25, 2019, the trial court entered an order dismissing all claims in the case with prejudice.

¶ 15 On March 6, 2019, St. Mary's Hospital filed a notice of appeal, stating it was appealing the trial court's order granting plaintiff's motion for good-faith finding and its order denying third-party defendants' motions to consolidate cases. It also noted that "[j]udgment in this case became final with the Order of the Court dismissing the case entered on February 25, 2019."

¶ 16 On March 7, 2019, Dr. Chovatiya filed a motion to reconsider the trial court's denial

- 7 -

of its request for consolidation and the grant of plaintiff's motion for a good-faith settlement finding. On April 26, 2019, the trial court denied Dr. Chovatiya's motion, and she joined in St. Mary's Hospital's appeal.

¶ 17                                    II. ANALYSIS

¶ 18          On appeal, St. Mary's Hospital and Dr. Chovatiya challenge two of the trial court's orders. First, they argue the court erred in granting plaintiff's motion for a good-faith settlement finding, asserting it was not in good faith for plaintiff, Nelson, and ADM to apportion only 2.86% of the total settlement proceeds to alleged injuries occurring after the claimed medical negligence. St. Mary's Hospital argues that the trial court's order and good-faith finding indicates that it erroneously determined that ADM and Nelson could not be held jointly and severally liable for damages caused by the claimed medical negligence that occurred on August 2014. Both St. Mary's Hospital and Dr. Chovatiya also contend that the less than 3% allocation for the medical negligence damages reflects an attempt by plaintiff to manipulate the settlement proceeds, thereby preventing the medical malpractice defendants from receiving an appropriate set off and effectively allowing her an improper double recovery for the medical malpractice damages.

¶ 19          Second, St. Mary's Hospital and Dr. Chovatiya challenge the trial court's denials of their requests to consolidate plaintiff's 2013 personal injury cause of action, wherein ADM and Nelson brought a third-party complaint for equitable apportionment against them, and plaintiff's 2015 medical malpractice action, naming them as defendants. They argue that the cases involved the same claims of medical negligence from the August 2014 procedure, many of the same parties, and much of the same medical evidence. Both St. Mary's Hospital and Dr. Chovatiya acknowledge that the issue of consolidation is moot if the trial court's good-faith settlement finding is upheld,

given that all of the claims in the underlying personal injury action were dismissed as a result of the settlement. However, they argue that, in the event the court's good-faith finding is reversed and remanded for further proceedings, the underlying claims will be "revived" or "reinstat[ed]" and the issue of consolidation will become relevant.

¶ 20                              A. Good Faith Settlement Finding

¶ 21                                    1. *The Contribution Act*

¶ 22          "The Contribution Act creates a statutory right of contribution in actions 'where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death' ***." *Johnson v. United Airlines*, 203 Ill. 2d 121, 128, 784 N.E.2d 812, 817 (2003) (quoting 740 ILCS 100/1, 2(a) (West 1996)). It applies to not only joint tortfeasors but also to concurrent and successive tortfeasors. *Patton v. Carbondale Clinic, S.C.*, 161 Ill. 2d 357, 368, 641 N.E.2d 427, 432 (1994).

¶ 23          Further, "the Contribution Act seeks to promote two important public policies— the encouragement of settlements and the equitable apportionment of damages among tortfeasors." (Internal quotation marks omitted.) *Antonicelli v. Rodriguez*, 2018 IL 121943, ¶ 13, 104 N.E.3d 1211.

> "Specifically, the Contribution Act promotes settlement by providing that a defend-
> ant who enters a good-faith settlement with the plaintiff is discharged from any
> contribution liability to a nonsettling defendant. [Citations.] The Contribution Act
> also ensures equitable apportionment of damages among tortfeasors by creating a
> right of contribution among defendants and by providing that the amount that the
> plaintiff recovers on a claim against any other nonsettling tortfeasors will be

- 9 -

reduced or set off by the amount stated in the settlement agreement." (Internal quotation marks omitted.) *Id.*; see also 740 ILCS 100/2(c), 2(d) (West 2018).

¶ 24 "[T]he only limitation the Contribution Act places on a settlement is that the settlement be in 'good faith.' " *Antonicelli*, 2018 IL 121943, ¶ 14. In particular, section 2(c) of the Contribution Act states as follows:

"When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." 740 ILCS 100/2(c) (West 2018).

¶ 25 "[W]hen a court determines whether a settlement was negotiated in good faith within the meaning of the Contribution Act, the settling parties carry the initial burden of making a preliminary showing of good faith." *Johnson*, 203 Ill. 2d at 132. "At a minimum, the settling parties must show the existence of a legally valid settlement agreement." *Id.* "[O]nce a preliminary showing of good faith has been made by the settling parties, the party challenging the good faith of the settlement need prove the absence of good faith by a preponderance of the evidence." *Id.*

¶ 26 "A settlement will not be found to be in good faith if it is shown that the settling parties engaged in wrongful conduct, collusion, or fraud." *Id.* at 134. "Nor will a settlement agreement satisfy the good-faith requirement if it conflicts with the terms of the Act or is inconsistent with the policies underlying the Act." *Id.* "[T]he issue of whether the allocation in the settlement

- 10 -

equitably apportioned damages is central to a circuit court's good-faith determination." *Cianci v. Safeco Insurance Co. of Illinois*, 356 Ill. App. 3d 767, 777, 826 N.E.2d 548, 557 (2005).

¶ 27　　　　　Finally, "whether a settlement satisfies the good-faith requirement as contemplated by the Contribution Act is a matter left to the discretion of the trial court based upon the court's consideration of the totality of the circumstances." *Johnson*, 203 Ill. 2d at 135. "A good-faith determination is reviewed on appeal for an abuse of discretion." *Id.*

¶ 28　　　　　　　　　　　　　　　2. *Jurisdiction*

¶ 29　　　　　On review, ADM and Nelson initially argue that the present appeal should be dismissed for a lack of appellate jurisdiction. They contend that St. Mary's Hospital and Dr. Chovatiya did not appeal from the final judgment in the case, which dismissed all pending claims. They further suggest that an appeal of the trial court's good-faith finding is moot because reversal on appeal would have no practical effect on the final judgment. ADM and Nelson argue that "[r]eversal of a good faith finding [would] not revive the primary action or any other claim in the 2013 action."

¶ 30　　　　　Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) "allows appeals from final judgments as a matter of right." *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502, 687 N.E.2d 871, 874 (1997). A notice of appeal must be filed within 30 days after the entry of the final judgment appealed from or within 30 days after the entry of the order disposing of the last pending postjudgment motion. Ill. S. Ct. Rule 303(a) (eff. July 1, 2017). "A judgment or order is 'final' if it disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy." *Dubina*, 178 Ill. 2d at 502. Further, "[a]n appeal is moot if no actual controversy exists or when events have occurred that make it impossible for the reviewing

- 11 -

court to render effectual relief." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10, 51 N.E.3d 788.

¶ 31    In *Dubina*, 178 Ill. 2d at 501, a nonsettling defendant appealed the trial court's orders finding that settlements between other parties in the case were made in good faith and dismissing the nonsettling party's contribution claims with prejudice. On review, the supreme court addressed issues of appellate jurisdiction in the case, including an argument that because the nonsettling defendant's third-party contribution claims were contingent upon liability in the underlying action, they might be moot if the plaintiffs were unsuccessful in their direct action. *Id.* at 508. The court rejected that argument, stating "[t]he contingent nature of the appeal generally does not make the orders any less final and does not affect appellate jurisdiction under Rule 301." *Id.* It also held that the appeal was not moot, and an actual controversy existed because the nonsettling defendant remained "subject to liability in tort and the legal consequences of the settlement agreements." *Id.*

¶ 32    Here, we disagree with the contention by ADM and Nelson that appellate jurisdiction is lacking. First, the record reflects that both St. Mary's Hospital and Dr. Chovatiya filed timely notices of appeal. St. Mary's Hospital filed its notice of appeal on March 6, 2019, within 30 days of the trial court's February 25, 2019, order, dismissing all claims in the case with prejudice. Dr. Chovatiya filed her notice of appeal on May 1, 2019, within 30 days of the trial court's April 26, 2019, denial of her motion to reconsider. Accordingly, claims by ADM and Nelson that St. Mary's Hospital and Dr. Chovatiya "do not appeal from the final judgment" are without merit.

¶ 33    Second, as set forth in *Dubina*, appeals from good-faith settlement findings and the resulting dismissal of claims present an actual controversy and are not moot where the nonsettling

defendant remains subject to both liability and the consequences of the challenged settlement agreement. Thus, to the extent ADM and Nelson argue that issues like the one in the case at bar can present no actual controversy, their claims are also without merit.

¶ 34                                    3. *Standing*

¶ 35        However, ADM and Nelson also argue on appeal, as they did before the trial court, that St. Mary's Hospital and Dr. Chovatiya "have not preserved or invited the policies of the Contribution Act to support their position" because they failed to assert any claim under the Contribution Act in either the 2013 personal injury case or the 2015 medical malpractice case. In other words, they contend that St. Mary's Hospital and Dr. Chovatiya lack standing to challenge the trial court's good-faith settlement finding on appeal. We agree with this contention.

¶ 36        "The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit." *Glisson v. City of Marion*, 188 Ill. 2d 211, 221, 720 N.E.2d 1034, 1039 (1999). "[F]or a party to have standing to appeal a particular judgment, that party's rights must have been prejudiced by that particular judgment." *Cianci*, 356 Ill. App. 3d at 775. "The failure to timely file a claim for contribution against a joint tortfeasor waives any right to object to a settlement by plaintiff." *Stickler v. American Augers, Inc.*, 303 Ill. App. 3d 689, 692, 708 N.E.2d 403, 405 (1999).

¶ 37        In *Stickler*, the plaintiff's decedent was crushed by an auger while working on a construction project. *Id.* at 691. The plaintiff brought a wrongful death and survival action against several defendants, including the manufacturer of the auger and three "construction defendants," each of whom had some supervisory authority over the construction project. *Id.* All of the defendants then filed third-party complaints for contribution against the decedent's employer. *Id.*

- 13 -

Ultimately, the plaintiff negotiated a settlement with the decedent's employer and the construction defendants. *Id.* The nonsettling defendant objected to the settlement, arguing it was in bad faith. *Id.* Following a hearing, the trial court found the settlement was made in good faith and the nonsettling defendant appealed. *Id.* at 691-92.

¶ 38 On review, the First District addressed the issue of standing and noted that the nonsettling defendant filed a contribution action against only the decedent's employer and not any of the construction defendants. *Id.* at 692. As a result, it held the nonsettling defendant was "without standing to object to that portion of [the] plaintiff's combined, structured settlement allocated to the [construction defendants]." *Id.* Because the nonsettling defendant had filed a contribution claim against the decedent's employer, the court did consider whether that portion of the settlement was in good faith within the meaning of the Contribution Act. *Id.*; *c.f. Cianci*, 356 Ill. App. 3d at 776-77 (finding the general rule articulated in *Stickler* regarding a party's standing to appeal a good-faith settlement finding was inapplicable where the nonsettling defendant had not yet missed its opportunity to *timely* file a claim for contribution when the trial court's good-faith orders were entered.)

¶ 39 Regarding the issue of standing, the supreme court's decision in *Henry v. St. John's Hospital*, 138 Ill. 2d 533, 563 N.E.2d 410 (1990), is also instructive. There, the court held that nonsettling defendants waived their right to contribution from other joint tortfeasors by failing to file a claim for contribution. *Id.* at 550. In so holding, the court declined to reach the issue of whether the plaintiff's settlement with other parties was entered in good faith within the meaning of the Contribution Act on the basis that the settlement could not have discharged any contribution liability. *Id.* at 547-48. It noted that a discharge of contribution liability under the Contribution Act

- 14 -

could not occur where the settling joint tortfeasor had no contribution liability before entering into the settlement agreement and, "because of the nonsettling tortfeasors' failure to preserve their contribution claim, can have no such liability thereafter." *Id.* at 548. The court further stated as follows:

> "As we have already explained, defendants in the case at bar failed to preserve their right to contribution from [the settling defendants], because they neglected to raise the contribution claim in a timely fashion during the original proceeding. The doctrine of contribution among joint tortfeasors is equitable in origin [citations], and 'equity aids the vigilant and not those who sleep on their rights' [citations]. Defendants had ample opportunity to alert the trial court to their interests by filing a contribution claim at some point during the original trial. This means that, at the time the trial judge approved the settlement agreement, [the settling defendants] could not possibly have been liable to defendants for contribution; the right had been waived. Technically, [the settling defendants] had no contribution liability to be discharged at the time the 'good-faith' determination was made. The trial court's finding that the settlement agreement was in good faith, therefore, could not possibly be a bar to defendants' contribution claim against [the settling defendants]." *Id.* at 548-49.

¶ 40    Clearly, the Contribution Act creates a right of contribution among joint tortfeasors. However, failure to timely file a claim for contribution waives that right. Here, ADM and Nelson argue that St. Mary's Hospital and Dr. Chovatiya never asserted any contribution claims against them in either the 2013 personal injury action or in the 2015 medical malpractice case. Neither St.

Mary's Hospital nor Dr. Chovatiya dispute that contention and, in fact, St. Mary's Hospital asserts in its briefs on appeal that "no party has filed a contribution claim against any other party." Further, as ADM and Nelson point out, although the 2015 case is apparently still pending, the applicable statute of limitations bars St. Mary's Hospital and Dr. Chovatiya from raising a contribution claim against ADM and Nelson in that action. See 735 ILCS 5/13-204(b) (West 2018) ("In instances where an underlying action has been filed by a claimant, no action for contribution or indemnity may be commenced more than 2 years after the party seeking contribution or indemnity has been served with process in the underlying action or more than 2 years from the time the party *** knew or should reasonably have known of an act or omission giving rise to the action for contribution or indemnity, whichever period expires later.").

¶ 41        Based on the appellate record, which contains docket sheets from the 2015 medical malpractice case, the statute of limitations also barred St. Mary's Hospital and Dr. Chovatiya from filing contribution claims against ADM and Nelson at the time plaintiff filed her motion for a good-faith settlement finding in January 2019 and when the trial court entered its good-faith order in February 2019. Again, neither St. Mary's Hospital nor Dr. Chovatiya dispute the contention that they have failed to timely assert their right to contribution under the Contribution Act.

¶ 42        Ultimately, because St. Mary's Hospital and Dr. Chovatiya did not seek contribution from ADM and Nelson, there was no contribution liability to be discharged through the trial court's good-faith settlement finding. In other words, the contribution rights of St. Mary's Hospital and Dr. Chovatiya were not prejudiced by the trial court's good-faith settlement finding because they had waived them. Accordingly, they had no standing to object to the settlement before the trial court and no standing to challenge the trial court's good-faith finding on appeal.

- 16 -

¶ 43    We note that in response to ADM and Nelson's standing argument, Dr. Chovatiya argues that she was not required to file a contribution claim to assert a setoff. See *Patton*, 161 Ill. 2d at 371 (rejecting a plaintiff's argument that a nonsettling defendant who was seeking a set off should bear the loss of the settling parties' failure to allocate settlement proceeds because the nonsettling defendant failed to seek contribution from the settling defendants). We do not dispute this contention. However, here, St. Mary's Hospital and Dr. Chovatiya are not at the point of any proceeding where they are actually claiming a set off. Rather, they are seeking to challenge the trial court's good-faith settlement finding under the Contribution Act—which acts to discharge the settling defendants' contribution liability—when they never asserted and, in fact, waived their rights to contribution. The authority Dr. Chovatiya cites speaks to a different issue and point of the proceedings than the present case and it is inapplicable to the issue of standing raised by ADM and Nelson.

¶ 44    Here, St. Mary's Hospital and Dr. Chovatiya waived their rights to contribution under the Contribution Act by failing to timely assert a contribution claim against ADM and Nelson. Accordingly, they lack standing to challenge the trial court's good-faith settlement finding on appeal.

¶ 45                                B. Consolidation

¶ 46    As stated, St. Mary's Hospital and Dr. Chovatiya also argue on appeal that the trial court erred by denying their motions to consolidate plaintiff's 2013 personal injury action and her 2015 medical malpractice case. Both concede, however, that their challenges are moot where the trial court's good-faith settlement finding in the 2013 case is upheld and that case remains dismissed.

- 17 -

¶ 47 As stated, "[a]n appeal is moot if no actual controversy exists or when events have occurred that make it impossible for the reviewing court to render effectual relief." *Commonwealth Edison Co.*, 2016 IL 118129, ¶ 10. In this instance, because we find St. Mary's Hospital and Dr. Chovatiya lack standing to challenge the trial court's good-faith settlement finding and do not address the merits of that claim, the issues they raise regarding consolidation remain moot and we do not consider them.

¶ 48 III. CONCLUSION

¶ 49 For the reasons stated, we dismiss this appeal for lack of standing.

¶ 50 Appeal dismissed.