NORMAN BOWERS, Plaintiff-Appellee, v. MURPHY AND MILLER, INC., *et al.*, Defendants (Murphy and Miller, Inc., Third-Party Plaintiff-Appellant; Belden Stratford Hotel Limited Partnership, Third-Party Defendant-Appellee).

First District (4th Division)   No. 1—94—0886

Opinion filed May 11, 1995.

Querrey & Harrow, Ltd., of Chicago (Eric Samore, Julie L. Trester, and Michael Resis, of counsel), for appellant.

O'Connor, Schiff & Myers, of Chicago (Neil D. O'Connor, Loretta M. Griffin, and Ana Maria L. Downs, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

In this opinion, we address the standard to be applied by a trial court in determining whether a release or covenant not to sue or not to enforce a judgment is given in good faith pursuant to section 2(c) of the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/2(c) (West 1992)).

On August 17, 1987, while engaged in his employment for IRMCO Properties and Management Corporation (IRMCO), the plaintiff, Norman Bowers, fell through a ventilation shaft in the Belden Stratford Hotel (Hotel) and sustained serious injuries to his back, ribs, ankles, and legs. According to the plaintiff's answers to interrogatories, he fractured both ankles, both legs, his right ribs, and two lumbar vertebrae. The plaintiff underwent multiple surgeries, including open reductions of both ankles and legs, and was confined to a wheelchair for nine months. His medical expenses are in excess of $50,000 and he has been unable to work since his injury.

The plaintiff filed the instant action seeking recovery against the defendants, Murphy & Miller, Inc., and Gerson Electric Construction Co., grounded in allegations of negligence and violations of the Illinois Structural Work Act (Ill. Rev. Stat. 1987, ch. 48, par. 60 *et seq.*). Murphy & Miller filed a third-party action for contribution against

IRMCO and the Belden Stratford Hotel Limited Partnership (Belden), the owner of the Hotel.

Belden's general partner is the Belden Stratford Corporation whose president is also the chief financial officer of IRMCO, the plaintiff's employer. The record reveals that the vice-president of the Belden Stratford Corporation supervised the IRMCO employee who was in charge of the renovation project underway at the Hotel on the date that the plaintiff was injured. The plaintiff never joined Belden as a defendant.

Belden entered into a written settlement and release agreement with the plaintiff under the terms of which the plaintiff received $10,000 in exchange for a full and complete release of Belden from all liability as a consequence of his injuries. On February 14, 1994, the trial court entered an order finding that the settlement between Belden and the plaintiff was in good faith pursuant to section 2(c) of the Contribution Act and dismissed Murphy & Miller's third-party action against Belden pursuant to section 2(d) of the Act (740 ILCS 100/2(d) (West 1992)). The order also contained the requisite finding under Supreme Court Rule 304(a). (134 Ill. 2d R. 304(a).) Murphy & Miller filed this appeal seeking a reversal of the order contending that the trial court abused its discretion in finding that the settlement between the plaintiff and Belden was in good faith and in dismissing its third-party action for contribution against Belden.

The Contribution Act serves two equally important policies: first, it allows for an equitable sharing of damages among tortfeasors according to their relative culpability, and second, it encourages settlements. (See *In re Guardianship of Babb* (1994), 162 Ill. 2d 153, 642 N.E.2d 1195; *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792.) A party liable in tort to an injured plaintiff can secure the dismissal of any contribution claims against it by entering into a good-faith settlement with the plaintiff. (740 ILCS 100/2(d) (West 1992).) It is the good-faith nature of a settlement under section 2(c) of the Contribution Act that triggers the discharge of the settling tortfeasor's liability for contribution to any other tortfeasor under section 2(d); however, the Contribution Act does not define good faith. Whether a settlement was made in good faith must be determined by the trial court after consideration of all of the surrounding circumstances. (*Wilson v. Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 546 N.E.2d 524.) The trial court's finding on the issue will not be reversed on appeal absent an abuse of discretion. *Babb*, 162 Ill. 2d 153, 642 N.E.2d 1195.

In this case, the trial court correctly held that once a preliminary showing of good faith was made, the burden shifted to Murphy &

Miller to establish that the settlement between the plaintiff and Belden was not in good faith. (*Wilson*, 131 Ill. 2d at 318-19.) However, the trial court also held that Murphy & Miller was required to meet its burden with clear and convincing evidence of fraud or collusion, and equated the validity of a written settlement agreement with good faith for purposes of the application of sections 2(c) and 2(d) of the Contribution Act. We disagree.

Although our supreme court has yet to address the standard of proof required to establish a lack of good faith, a number of appellate decisions in this State have held that a nonsettling defendant is required to establish an absence of good faith for the purposes of the Contribution Act by clear and convincing evidence. (See *Banks v. R.D. Werner Co.* (1990), 201 Ill. App. 3d 762, 559 N.E.2d 217; *Pritchard v. SwedishAmerican Hospital* (1990), 199 Ill. App. 3d 990, 557 N.E.2d 988; *Melzer v. Bausch & Lomb, Inc.* (1989), 193 Ill. App. 3d 59, 549 N.E.2d 817; *Jachera v. Blake-Lamb Funeral Homes, Inc.* (1989), 189 Ill. App. 3d 281, 545 N.E.2d 314; *Ruffino v. Hinze* (1989), 181 Ill. App. 3d 827, 537 N.E.2d 871; *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 515 N.E.2d 157; *Wasmund v. Metropolitan Sanitary District of Greater Chicago* (1985), 135 Ill. App. 3d 926, 482 N.E.2d 351.) The appellate decisions that address the reason for holding a nonsettling defendant to an elevated burden of proof seem to rest upon a consideration of the public policy favoring the peaceful out-of-court compromise and settlement of claims. *Pritchard*, 199 Ill. App. 3d at 997; *Jachera*, 189 Ill. App. 3d at 285; *McKanna*, 161 Ill. App. 3d at 525.

Strikingly absent from these decisions is any consideration of the policy embodied in the Contribution Act which promotes an equitable apportionment of damages among tortfeasors. When traced back to *Wasmund*, the specific holdings in these cases relating to the burden placed upon a nonsettling defendant ultimately rest upon a body of law which developed in reference to the question of setting aside releases for personal injury torts. (See *Wasmund*, 135 Ill. App. 3d at 928, citing with authority *Martin v. Po-Jo, Inc.* (1969), 104 Ill. App. 3d 462, 244 N.E.2d 851.) As public policy favors compromise and settlement, a written release effective in form will not be set aside absent clear and convincing evidence of its invalidity. As was noted in *Smith v. Texaco, Inc.* (1992), 232 Ill. App. 3d 463, 468, 597 N.E.2d 750:

> "A presumption of validity of a settlement or release agreement arises by the mere existence of an agreement which is legal and binding on its face. [Citation.] A party to such an agreement can overcome that presumption by proving through clear and convinc-

ing evidence that there was fraud in the inducement, fraud in the execution, mutual mistake or mental incompetency."

We have no quarrel with this proposition as it relates to attempts by a party to a written release to set the agreement aside. What we question is its applicability to the burden placed upon a nonsettling defendant attempting to establish that a settlement is not in good faith for purposes of the Contribution Act.

■ When we address setting aside a release on the application of a party to the agreement, we take into consideration the rights of the contracting parties tempered by a public policy favoring settlement. Nonsettling defendants in a contribution setting are not parties to the settlements entered into between a plaintiff and a settling tortfeasor, yet they have rights that are affected by those settlements. The Contribution Act promotes not only the policy favoring settlement, it also promotes the policy favoring the equitable apportionment of damages among tortfeasors. (*Babb*, 162 Ill. 2d at 171.) The policy favoring settlement is more than accommodated by shifting the burden of proof to a nonsettling defendant to establish that a settlement is not in good faith once a preliminary showing of good faith has been made. By not only shifting the burden of proof to a nonsettling defendant, but also elevating that burden to proof by clear and convincing evidence, a distinct priority is given to the policy favoring settlement over the policy favoring the equitable apportionment of damages. Both policies are important (*Babb*, 162 Ill. 2d at 171), and we fail to see any reason why one should be favored over the other. In our opinion, shifting the burden of proof to a nonsettling defendant to establish a lack of good faith and fixing that burden at the traditional preponderance of the evidence standard protects both policies promoted by the Contribution Act while favoring neither.

■ Lastly, the trial court in this case seemed to equate the validity of the settlement between the plaintiff and Belden with the question of whether the settlement was in good faith for purposes of the Contribution Act. We find no authority for the proposition that all valid settlement agreements are given in good faith. In fact, we find authority to the contrary. (See *Smith*, 232 Ill. App. 3d at 468.) Section 2(c) of the Contribution Act speaks in terms of releases given in good faith; it is not couched in terms of valid agreements. While we are prepared to say that an invalid agreement could never satisfy the good-faith requirements of the Contribution Act, we are not prepared to say that all valid agreements are necessarily given in good faith. A competent plaintiff might, for whatever reason, give a release supported by some nominal consideration to a tortfeasor without regard

to the tortfeasor's potential liability or the relationship between the consideration received and the tortfeasor's relative culpability. Absent fraud in the inducement, fraud in the execution, or mutual mistake of fact, such a release may well be valid as between the released tortfeasor and the plaintiff, but a court might also find after a consideration of all of the circumstances surrounding such an agreement that it was not given in good faith for purposes of the Contribution Act. In determining whether a particular settlement was made in good faith, the trial court must consider the totality of the circumstances. One of the factors that must be considered is whether the settlement is consistent with the policies underlying the Contribution Act. If, after considering all attendant circumstances, a court determines that a particular settlement conflicts with the policy of the Contribution Act which encourages the equitable apportionment of damages, that settlement would not satisfy the good-faith requirement of section 2(c). *Babb*, 162 Ill. 2d at 170.

It is the function of the trial court to determine if a settlement is in good faith under the Contribution Act, and we will not disturb that finding unless it is manifestly erroneous. But when, as in this case, the trial court has held a litigant to an improper standard of proof, the proper procedure on review is to reverse and remand the matter to the trial court to reweigh the evidence in light of the correct standard. (*Heller v. Jonathan Investments, Inc.* (1985), 135 Ill. App. 3d 350, 481 N.E.2d 997.) As a consequence, we reverse the finding of the trial court that the settlement between the plaintiff and Belden was in good faith and its dismissal of Murphy & Miller's claim for contribution against Belden, and remand this action to the circuit court of Cook County for further proceedings consistent with this opinion.

Reversed and remanded.

CAHILL and S. O'BRIEN, JJ., concur.