No. 1-96-0246
Cons. 1-96-0306, 1-96-0307, 1-96-0309

CIRILIO OREJEL and SALVADOR ) APPEAL FROM THE
VEGA, Indiv. and as Adm'r. of ) CIRCUIT COURT OF 
the ESTATES OF J. JESUS OREJEL, ) COOK COUNTY 
GRACIELA OREJEL, SR., SALVADOR )
OREJEL, ANGELICA OREJEL, J. JESUS )
OREJEL, JR., GRACIELA OREJEL, JR., )
ERNESTO OREJEL, PATRICIA OREJEL, )
LUIS OREJEL, MARGARITA OREJEL, )
all Deceased, )
 )
Plaintiffs-Appellees, )
 )
 v. )
 )
YORK INTERNATIONAL CORPORATION, )
INC., WILLIAM V. WANTUCK, d/b/a )
WANTUCK and SONS, GRAYSON CONTROLS, ) No. 91 L 19861
a Division of ROBERT SHAW CONTROL )
COMPANY, PEOPLES GAS LIGHT and COKE )
COMPANY, K and K HEATING and AIR )
CONDITIONING COMPANY, AMERICAN GAS )
ASSOCIATION, ) 
 ) 
(YORK INTERNATIONAL CORPORATION, INC., )
Counter-Plaintiff-Appellee; WANTUCK, )
d/b/a WANTUCK and SONS, GRAYSON )
CONTROLS, a Division of ROBERT SHAW )
CONTROL COMPANY, PEOPLES GAS LIGHT )
and COKE COMPANY, K and K HEATING and )
AIR CONDITIONING COMPANY, AMERICAN GAS ) THE HONORABLE
ASSOCIATION, Counter-Defendants- ) IRWIN SOLGANICK
Appellants). ) JUDGE PRESIDING.

 

 PRESIDING JUSTICE COUSINS delivered the opinion of the
court:
 Plaintiffs, the independent administrators of the deceased
brought wrongful death and survival claims to recover for the
deaths of 10 family members who died as the result of carbon
monoxide poisoning. Defendant York International Corporation
(York) entered a $10 million settlement agreement with
plaintiffs, releasing York as well as other defendants from
further liability. Various defendants, including York, asserted
counterclaims and third-party claims in the underlying action,
which are still pending before the trial court. The trial court
found that the settlement was made in good faith and was fair and
reasonable in its amount. Certain defendants appealed the trial
court's decision, contending that: (1) the good-faith provisions
of the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 et
seq. (West 1992)) do not apply to the settlement reached between
York and the plaintiffs; (2) the trial court erred in denying
their right to have a jury determine the amount against which
their contribution liability, if any, would be assessed; and (3)
the trial court erred in refusing to require that York's
insurance carrier be identified as a real party in interest in
the prosecution of York's contribution counterclaim.
York also appeals, contending that contribution defendant K&K
Heating and Air Conditioning, Inc., failed to file a timely
notice of appeal.
BACKGROUND
 The underlying action brought by plaintiffs arises out of
the deaths of J. Jesus Orejel, Sr., his wife, Graciela Orejel,
Sr., and their eight children. The Orejel family died of carbon
monoxide asphyxiation on or about November 8, 1991, when a lethal
level of carbon monoxide escaped into their home from a breach in
the vent system of their furnace. In their sixth amended
complaint, plaintiffs, the independent administrators of the
estates of the decedents, asserted claims of negligence and/or
strict liability under the Illinois Wrongful Death Act (740 ILCS 
180/0.01 et seq. (West 1992)) and the Illinois Survival Act (755
ILCS 5/27-6 (West 1992)) against the following corporations and
individuals: York; K&K Heating and Air Conditioning (K&K); Inc;
Marzullo Furnace Supply Company (Marzullo); Jose Duenas d/b/a
Airworks Heating and Cooling (Duenas); R&D Mechanical, Inc; David
Grubisic; Joseph Grubisic; Grubisic Heating and Air Conditioning
(R&D Mechanical); Grayson Controls (Grayson); William V. Wantuck,
d/b/a Wantuck & Sons (Wantuck); All City Heating and Cooling,
Inc. (All City); White Rodgers, Inc.; Park Heating & Air
Conditioning Supply, Inc. a/k/a Park Supply, Inc. (Park Supply);
Z-Flex U.S., Inc. (Z-Flex); Flexmaster Canada Ltd. (Flexmaster);
Hart & cooley, Inc. (Hart & Cooley); and the American Gas
Association (AGA). The complaint alleged that the defendants
were involved in the design, manufacture, certification, sale,
distribution, installation, inspection, service and/or repair of
the subject furnace and/or certain of its component parts.
 Plaintiffs alleged in their complaint that the decedents did
not die instantly upon being exposed to the carbon monoxide
emitted from the breached vent system but,instead, suffered great
pain from the moment of their initial exposure until the time of
their respective deaths, as evidenced by the location and
condition in which each of the decedent's bodies was found. 
Plaintiffs further alleged that, between them, J. Jesus Orejel,
Sr., and Graciela Orejel, Sr., left 17 surviving next of kin.
 On December 10, 1993, York filed counterclaims seeking
contribution from each of the named defendants and filed a third-
party complaint against the Peoples Gas Light and Coke Company
(Peoples Gas), which had inspected the subject furnace on at
least two occasions prior to the accident. Most other defendants
also filed counterclaims against most, if not all, of their
codefendants.
 In February and March of 1995, counsel for York contacted
counsel for all codefendants (except those that were not known to
have insurance coverage) and advised them that York was
interested in assembling a settlement package to offer
plaintiffs. York would assume the lead in settlement
negotiations with plaintiffs. York's counsel also requested the
names of the insurance representatives and sought their
participation in a possible global settlement. Thereafter, York
contacted the various codefendants' insurers and/or counsel and
sought their contribution to such a settlement. However, York
was met with strong resistance by other defendants and was
unsuccessful.
 Nevertheless, York pursued settlement discussions with lead
counsel for plaintiffs. On April 19, 1995, following extensive
negotiations, York and plaintiffs orally reached a settlement
agreement to pay plaintiffs $10 million in exchange for
plaintiffs' agreement to release and extinguish their claims
against York and all other codefendants and third-party
defendants so that York could preserve and pursue its
contribution claims against all other defendants. York and
plaintiffs conditioned their agreement on the entry by the
circuit court of an order finding that the agreement was made in
good faith and was fair and reasonable in accordance with the 
Contribution Act. 740 ILCS 100/0.01 et seq. (West 1992).
Plaintiffs also agreed to give York sufficient time to continue
its efforts to seek the participation of all other defendants in
contributing to the $10 million settlement and to resolve York's
contribution claims.
 Following the oral settlement agreement with plaintiffs,
counsel for York notified all defendants of the settlement and
invited them to a meeting on May 11, 1995, to discuss the
possibility of obtaining the participation of all defendants in
the settlement. Prior to this meeting, York and codefendant,
Park Supply reached an agreement settling York's contribution
claim against Park Supply for $300,000. All other codefendants,
except for White Rodgers, K&K, Duenas, and R&D Mechanical,
attended the May 11, 1995, meeting.
 During the May 11, 1995, meeting, York's counsel and
insurance representative discussed the circumstances surrounding,
and the terms of, the settlement reached with plaintiffs and
answered all questions related thereto. Thereafter, York again
urged all parties to participate in the settlement and, upon the
request of several co-defendants, conducted separate meetings to
discuss participation amounts. Following this meeting, York
continued settlement discussion with several of the codefendants. 
On July 12, 1995, York reached an agreement with another
codefendant, Marzullo, to settle its contribution claim for
$300,000.
 In September 1995, York and plaintiffs memorialized their
prior oral agreement by executing a full release and settlement
agreement. This settlement provides, inter alia, that York
agrees to pay $10 million in consideration of plaintiffs'
compromise and full settlement and extinguishment of all of their
claims against all defendants and third-party defendants, as well
as other named potential tortfeasors; that York intends to
retain, preserve, and fully pursue its rights of contribution
against all defendants expressly identified in the settlement as 
well as any other released parties; and that the settlement is
wholly conditioned upon the entry of a final order finding the
settlement was made in good faith and was fair and reasonable
pursuant to the Contribution Act.
 On October 19, 1995, York filed with the circuit court its
motion for a good-faith finding concerning its settlement with
plaintiffs and requested the court to: dismiss all of
plaintiffs' claims against all parties; enter a finding that the
settlement was reached in good faith and was fair and reasonable
in its amount; discharge York from any further liability from any
other potential tortfeasors; and dismiss all of York's
codefendants' claims against York. Certain of York' codefendants
opposed this motion, arguing that a good-faith finding was
unnecessary under the circumstances presented and that, in any
event, their right to a trial by jury required that a jury,
rather than the trial court, determine whether the settlement was
entered in good faith and was reasonable in its amount. These
codefendants also requested that the court substitute York's
insurance carrier as the named plaintiff in the caption of this
matter.
 York and the codefendants fully briefed York's motion, and
on December 21, 1995, the circuit court conducted a hearing on
the motion. The court heard extensive argument on the motion
and, at the conclusion of this hearing, granted York's motion in
its entirety and denied the request to recaption this action. 
The court specifically ruled that it was appropriate for York to
seek a good-faith finding with regard to the settlement and found
that the $10 million settlement figure was reasonable. The court
also determined that, under Illinois law, those opposed to York's
motion did not have a right to a jury trial to determine the
amount of the damages.
 Notices of appeal were filed by Flexmaster, Wantuck,
Grayson, Hart & Cooley, Peoples Gas, AGA, and K&K, and these
appeals were subsequently consolidated. Since the filing of this
appeal, Hart & Cooley and Flexmaster have reached settlements
with York. Grayson, Peoples Gas, AGA, and K&K have adopted
Wantuck's brief in whole or in part. Specifically, Grayson has
specifically not adopted Wantuck's constitutional argument that a
jury, rather than the circuit court, should determine the
reasonableness of the settlement amount. 
 We affirm.
ANALYSIS
 I
 The contribution defendants first contend that the trial
court erred in determining that the Contribution Act's good-faith
provision applied to York's settlement with plaintiffs. York
argues that the good-faith provision does apply and, therefore,
the court had authority to make a good-faith determination. 
 The crux of this issue involves the interpretation of
section 2 of the Illinois Joint Tortfeasor Contribution Act (the
Act) (740 ILCS 100/2 (West 1992), which provides in pertinent
part:
 "(a) Except as otherwise provided in this Act, where 2
 or more persons are subject to liability in tort arising out
 of the same injury to person or property, or the same
 wrongful death, there is a right of contribution among them,
 even though judgment has not been entered against any or all
 of them.
 (b) The right of contribution exists only in favor of a
 tortfeasor who has paid more than his pro rata share of the
 common liability,and his total recovery is limited to the
 amount paid by him in excess of his pro rata share. No
 tortfeasor is liable to make contribution beyond his own pro
 rata share of the common liability.
 (c) When a release or covenant not to sue or not to 
 enforce judgment is given in good faith to one or more 
 persons liable in tort arising out of the same injury or the
 same wrongful death, it does not discharge any of the other
 tortfeasors from liability for the injury or wrongful death
 unless its terms so provide but it reduces the recovery on
 any claim against the others to the extent of any amount
 stated in the release or the covenant, or in the amount of
 the consideration actually paid for it, whichever is
 greater.
 (d) The tortfeasor who settles with a claimant pursuant
 to paragraph (c) is discharged from all liability for any 
 contribution to any other tortfeasor.
 (e) A tortfeasor who settles with a claimant pursuant 
 to paragraph (c) is not entitled to recover contribution 
 from another tortfeasor whose liability is not extinguished
 by the settlement." 740 ILCS 100/2(a),(b),(c),(d),(e)(West
 1992).
In interpreting the above provision, this court has a duty to
determine the intent of the legislature when enacting the statute
and to enforce that intent. Henry v. St. John's Hospital, 138
Ill. 2d 533, 541, 563 N.E.2d 410 (1990). Legislative history and
case law reveal that the statute was enacted to serve two equally
important policies: first, it allows for an equitable sharing of
damages among tortfeasors according to their relative
culpability, and second, it encourages settlements. Bowers v.
Murphy & Miller, Inc., 272 Ill. App. 3d 606, 608, 650 N.E.2d 608
(1995); Lowe v. Norfolk & Western Ry. Co., 124 Ill. App. 3d 80,
463 N.E.2d 792 (1984). 
 When read together, the above statutory sections entitle an
insurer to recover contribution from a joint tortfeasor where the
insurer has settled with a claimant and has obtained a release,
given in good faith, that extinguishes both the tort liability of
its insured and the liability of another tortfeasor. Bituminous
Insurance Cos. v. Ruppenstein, 150 Ill. App. 3d 402, 404, 501
N.E.2d 907 (1986); Perez v. Espinoza, 137 Ill. App. 3d 762, 765,
484 N.E.2d 1232 (1985). It is the good-faith nature of a
settlement under section 2(c) of the Act that triggers the
discharge of the settling tortfeasor's liability for contribution
to any other tortfeasor under section 2(d). Bowers, 272 Ill.
App. 3d at 608. However, the Act does not define good faith. 
Whether a settlement was made in good faith must be determined by
the trial court after consideration of all of the surrounding
circumstances. Bowers, 272 Ill. App. 3d at 608. Once a
preliminary showing of good faith is made, the burden shifts to
the party challenging the settlement to establish that it was not
made in good faith. Wilson v. The Hoffman Group, Inc., 131 Ill.
2d 308, 318-19, 546 N.E.2d 524 (1989). A trial court's
determination of good-faith will not be overturned absent an
abuse of discretion. Wilson, 131 Ill. 2d at 319.
 We note that the contribution defendants do not challenge
the settlement between York and the plaintiffs on the basis that
it was not made in good faith. The contribution defendants argue
that a good-faith finding is inapplicable to the instant case
because York, settling on behalf of all defendants, no longer has
any contribution exposure to any other entities. Assuming
arguendo that York no longer has contribution exposure to other
entities, we consider the contribution defendants' contention
that the good-faith finding is inapplicable to the instant case
to be incorrect.
 Although the contribution defendants argue that the good-
faith provision has never been applied, and is not intended to be
applied, where a party settles the entirety of the plaintiff's
claims against all tortfeasors, they cite no authority for this
argument. Furthermore, their argument is in derogation of case
law. For example, in Hall v. Archer-Daniels-Midland Co., 122
Ill. 2d 448, 524 N.E.2d 586 (1988), plaintiff Hall sustained
injuries at a construction site. His estate sued Archer-Daniels-
Midland Company (ADM), and Mid-States General and Mechanical
Contracting Corporation (Mid-States), the erector of a catwalk. 
ADM in turn sued Mid-States and Hall's employer, Corrigan
Company, for contribution. Meanwhile, Hall settled all of his
claims with ADM for $1.5 million and released all parties
defendant. It appears that Corrigan did not consent to the
settlement; however, neither Corrigan nor Mid-States objected to
or challenged the good faith or reasonableness of the settlement. 
The matter proceeded to a jury trial on the proportionate faults
of Mid-States, Corrigan, and ADM. After the jury determined the
parties to be at fault 49%, 40% and 12%, respectively, the trial
court applied these proportions to the amount of the settlement
plus workers' compensation benefits. On appeal, the court
considered several issues, including Corrigan's assertion that
ADM failed to show that the amount of the settlement was
reasonable and made in good faith and that ADM therefore did not
establish that it paid more than its pro rata share of the common
liability. The court held that the settlement reached by ADM and
the plaintiff was in good faith and was reasonable, stating that:
 "In settling with the plaintiff and extinguishing the 
 potential tort liability of the others, ADM undertook the 
 collective liability of the parties for the injures at issue
 here, subject only to whatever success it might later have 
 in its contribution actions against Mid-States and Corrigan.
 That circumstance would give rise to a presumption of good 
 faith on the part of a contribution plaintiff who has
 settled the underlying tort action. Whether ADM paid an 
 amount in excess of its pro rata share of the common
 liability was the point decided by the jury in the trial of
 ADM's contribution claims, assuming that the amount of the
 settlement was appropriate. And as we have already
 indicated, the amount of the settlement was reasonable, in
 light of Hall's injuries, and Corrigan and Mid-States did
 not attempt in the trial court to contradict the 
 reasonableness or good faith of the settlement." Hall, 122
 Ill. 2d at 461.
 Therefore, in Hall, where a party settled on behalf of all
other tortfeasors, the good-faith provision was applicable in
determining whether the amount of the settlement was appropriate.
An instructive case is Ziarko v. Soo Line R.R. Co., 161 Ill. 2d
267, 641 N.E.2d 402 (1994), where defendant settled on behalf of
itself and the remaining defendant, and the court held that the
remaining defendant should have challenged the good-faith nature
of the settlement if it did not believe that the settlement
accurately reflected the parties' common liability to the
plaintiff. Ziarko, 161 Ill. 2d at 288. 
 In the instant case, the good-faith provision was also
applicable to determine whether the settlement amount or common
liability was appropriate. Although the settlement in Hall was
postjudgment, "[n]owhere in the Contribution Act does the
legislature distinguish between pretrial or post-judgment
settlements." Jessee v. Amoco Oil Co., 230 Ill. App. 3d 337,
347, 594 N.E.2d 1210 (1992). Under section 2(b) of the Act, both
types of settlement agreements are treated identically, and both
entitle the settling defendant to seek contribution from another
tortfeasor whose liability to the injured plaintiff is also
extinguished in the settlement agreement. Ziarko, 161 Ill. 2d at
287. 
 The contribution defendants assert that the purpose of the
good-faith finding is to protect the settling defendant against
contribution claims. Therefore, they argue that the good-faith
provision does not apply since York has no contribution claims
against it. However, this protection is afforded only when the
trial court determines that the settlement amount was reasonable
at a hearing on good faith. We believe that a finding by the
trial court that York's settlement with plaintiffs was made in
good faith was necessary in order for York to pursue its
contribution claims against other tortfeasors. 
 We disagree with the contribution defendants' argument that
a good-faith finding by the trial court in the instant case was
neither necessary nor proper for York to terminate the
plaintiffs' claims against it and to preserve its right to pursue
contribution claims. The policy of the Contribution Act is to
encourage compromise and settlement in the absence of bad faith,
fraud or collusion. Mallaney v. Dunaway, 178 Ill. App. 3d 827,
533 N.E.2d 1114 (1988). "[N]othing is better calculated to
frustrate and discourage settlements than the knowledge that the
settlement lacks finality and will lead to further litigation and
perhaps, to further liability." Perez v. Espinoza, 137 Ill. App.
3d 762, 765, 484 N.E.2d 1232 (1985). We believe that the
contribution de