1-01-4518) FOURTH DIVISION

1-02-2797) JULY 31, 2003

1-02-2831) Cons.

ASSOCIATED AVIATION UNDERWRITERS, INC., )

ALBERTO-CULVER COMPANY, THE AMERICAN INSURANCE )

COMPANY, CENTENNIAL INSURANCE COMPANY, )

CONTINENTAL CASUALTY COMPANY, FEDERAL INSURANCE ) Appeal from the 

COMPANY, FIREMAN'S FUND INSURANCE COMPANY, ) Circuit Court of 

GREENWICH INSURANCE COMPANY, LUMBERMAN'S   ) Cook County.

INSURANCE COMPANY and SUN INSURANCE OFFICE OF )

AMERICA, )

)

Plaintiffs-Appellees, ) 

)

v. ) 

)

AON CORPORATION and AON AVIATION, INC., )

)

Defendants-Appellees. ) 

------------------------------------------------) 

UNITED STATES AVIATION UNDERWRITERS, INC. and )

UNITED STATES AIRCRAFT INSURANCE GROUP, )

)

Interveners-Appellees, )

)

)

) Honorable

PALWAUKEE MUNICIPAL AIRPORT COMMISSION, VILLAGE ) Stephen A. Schiller,

OF WHEELING and CITY OF PROSPECT HEIGHTS, ) Judge Presiding.

) 

Interveners-Appellants. ) 

JUSTICE HARTMAN delivered the opinion of the court:

These appeals consider the propriety of a circuit court good-faith settlement finding in a subrogation setting.  The unique circumstances of the appeals involve an insurer that issued a policy containing language which provided coverage not only for its principal insured, one of the settling parties, but caused the circuit court, post-settlement, to declare the same insurer the primary insurer also of the second settling party.
(footnote: 1)  Prior to the settlement, the insurer recognized coverage for the principal insured, which previously had been found by a jury the less culpable party in an independent action, settled the claim made by the principal insured under the policy, then sued the more culpable party in subrogation (for which it was later declared the primary insurer) and accepted a significantly reduced amount of damages in settlement from the more culpable party, for which settlement it secured the good-faith finding.  In doing so, it deprived a third party from pursuing potentially meaningful contribution from the more culpable party.  For reasons which follow, we reverse and remand in each of the three appeals taken in this case.
(footnote: 2)
 The controversy emanates from property damage claims following the crash of a private, corporate owned aircraft at Palwaukee Municipal Airport (Palwaukee) on October 30, 1996.  In the first appeal (docket number 1-01-4518), Palwaukee Municipal Airport Commission, village of Wheeling and city of Prospect Heights (collectively the Municipalities) 
challenge a November 20, 2001 circuit court order, making the good-faith finding in a $6 million "Release and Settlement Agreement" (Settlement) between defendants, Aon Aviation, Inc.
 (sometimes Aon Aviation) and Aon Corporation (collectively Aon Defendants) and its insurers, United States
 
Aviation Underwriters (USAU) and United States Aircraft Insurance Group (USAIG), and plaintiffs, Alberto-Culver Company (Alberto), Alberto's primary insurer, Associated Aviation Underwriters, Inc. (AAU) and the above-named separate insurers (collectively Alberto Insurers) (good-faith appeal).

The Municipalities argue that the circuit court erred by granting Aon Defendants' motion for a good-faith finding because (1) it ignored the only evidence presented at the evidentiary hearing; (2) the Municipalities met the governing preponderance of the evidence standard; and (3) the Settlement violates the terms and purpose of the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 
et
 
seq.
 (West 2002) (Contribution Act)) and does not satisfy four prerequisites necessary to establish good-faith.  The Municipalities
 also contend that the Settlement does not represent a reasonable share of Aon Defendants' tort liability, because Aon Defendants were found 90% liable and Alberto 10% liable for the accident in a separate wrongful death action not involved in this appeal, and the settling parties concealed all information regarding the terms of Settlement.  In addition, the Municipalities assert that the court erred by refusing to allow discovery and failing to compel compliance with Supreme Court Rule 237 (166 Ill. 2d R. 237 (Rule 237)) notices before finding an alleged grossly disparate settlement to be in good-faith.

In their second appeal (docket number 1-02-2797), 
the Municipalities contest the denial of their motion for relief of judgment under Code of Civil Procedure (Code) section 2-1401 (735 ILCS 5/2-1401 (West 2002) (section 2-1401)), which disputed the good-faith finding, contending that their section 2-1401 motion presented new information that was unavailable at the time the good-faith finding was entered.  The Municipalities point to a January 11, 2001 letter in which AAU admitted the true value of the hull coverage claim was $12 million instead of $28 million.
(footnote: 3)  The Municipalities argue that Aon Defendants cannot obtain a 
 
good-faith finding on its Settlement because Alberto was the principal insured on AAU's policy, and AAU became Aon Defendants' primary insurer by virtue of an August 6, 2002 circuit court ruling.
(footnote: 4)  
The Municipalities claim that allowing the good-faith finding to stand would have a devastating effect on public policy of insurance coverage matters.

The third appeal (docket number 1-02-2831) involves the Municipalities' contention that the circuit court erred by denying their motion to stay the outstanding subrogation proceedings until the determination of the good-faith appeal
 because
 its August 6, 2002 finding that AAU is Aon Defendants' primary insurer establishes that the Alberto Insurers, having settled with their own insured, Alberto, stands in Alberto's shoes and should not be allowed to apportion competing interests of both Alberto and Aon to the detriment of third parties; as a result, the Municipalities cannot secure a fair contribution allocation via a third-party complaint against Aon Defendants, who have insulated themselves from paying their fair share of liability by the alleged good-faith settlement.

The issues presented for review include whether circuit court abused its discretion by: (1) finding that the Settlement was executed in good-faith; (2) 
denying the Municipalities' motion for relief from judgment under Code section 2-1401
; and (3)
 denying the Municipalities' motion to stay the subrogation proceedings pending the appeal of the good-faith finding.

Docket Number 1-01-4518 Appeal

On October 30, 1996, a Gulfstream GIV (GIV) aircraft owned and operated by Alberto crashed upon takeoff from Palwaukee, resulting in the deaths of all four persons aboard, including chief pilot and captain for Aon Aviation, Martin Larry Koppie; Robert Hampton Whitener, pilot and captain for Alberto; Arthur Quern, chief executive officer and chairman of the board for Aon Risk Management, Inc.; and Catherine Mio Anderson, a flight attendant employed by Executive Jet, whose services were secured by Aon Aviation.  The airplane was destroyed by impact and fire.  The flight was conducted pursuant to an Interchange Agreement, which permitted Aon Defendants and Alberto to utilize each corporation's GIV upon occasion.  Aon Defendants and Alberto agreed, 
inter
 
alia
, to (1) "hold harmless and indemnify the other from loss, expense, damages, claims or suits which they might suffer as a result of any act or omission of the other party"; (2) maintain operational control of their own GIV during use by the other party; and (3) purchase an aircraft insurance policy with a minimum $150,000,000 value to provide coverage when piloting each other's airplanes.  At the time of the accident, Aon Aviation operated Alberto's GIV for the business interests of Aon Defendants.  The accident resulted in the initiation of multiple causes of action for wrongful death and survival, declaratory judgment and  subrogation.

The circuit court consolidated for discovery and trial the wrongful death and survival actions brought by the four decedents' estates against various combinations of defendants, including Alberto, Aon Defendants, and the Municipalities.  Whitener's estate alleged that Koppie was at fault for the accident and that Aon Defendants failed to train and instruct adequately its pilots concerning procedures in mixed crew situations.  Koppie's estate alleged that Whitener was at fault and also claimed negligence against Alberto and the Municipalities.  Alberto and Whitener's estate filed counterclaims and third-party claims for contribution and contractual indemnity under the Interchange Agreement against Aon Defendants.  Aon Defendants filed a counterclaim against Alberto for contribution and contractual indemnity pursuant to the Interchange Agreement.  Aon Defendants and Alberto, however, did not file a counterclaim against the Municipalities. 

On May 24, 1999, the circuit court granted summary judgment in favor of the Municipalities pursuant to the Illinois Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1-101 
et
 
seq
. (West 2002) (Tort Immunity Act)).  The estates of Koppie and Quern, and Alberto appealed that decision, which was reversed and remanded for trial on December 7, 2000.  See 
Anderson v. Alberto-Culver USA, Inc.
, 317 Ill. App. 3d 1104, 1117, 740 N.E.2d 819 (2000).  The supreme court denied the Municipalities' petition for leave to appeal.  
Anderson v. Alberto-Culver USA, Inc.
, 194 Ill. 2d 565, 747 N.E.2d 351 (2001).

The consolidated causes of action proceeded to trial on November 14, 2000, but did not include claims asserted against the Municipalities.  Prior to verdict, the Anderson and Quern estates entered into settlement agreements with Alberto and their causes of action were dismissed.  Alberto retained their contribution and third-party claims against Aon Defendants for those settlements.   On January 23, 2001, the jury returned a verdict in favor of the Whitener estate and against "Aon" in the amount of $21,051,943, which was reduced by 10% for Whitener's contributory negligence to $18,946,749.  The circuit court entered judgment on the verdict on January 24, 2001.  The order stated that the jury rendered a verdict against "Aon Corporation" and declared a mistrial as to any and all remaining causes of action, including the Koppie estate's claim and all claims for contribution "by and between Alberto-Culver USA Inc. and Aon Aviation Corp." and contractual indemnity in the Interchange Agreement "by Aon Corporation aka [
sic
] Aon Aviation Corp. against Alberto-Culver, USA, Inc."  With respect to the declaration of mistrials, the order was corrected to remove Aon Corporation from the cross-action for contribution and include Aon Aviation for the contribution and contractual indemnity actions.  

On July 12, 2001, the circuit court granted Alberto's emergency motion to correct the record and ordered 
nunc
 
pro
 
tunc
 that judgment be entered on the jury verdict in favor of Whitener's estate and against Aon Aviation.  The order declared mistrials in all remaining causes of action, found that naming Aon Corporation as the party against whom judgment was entered on January 24, 2001, was a clerical error and that the January 24 order was void and of no effect.  Another July 12, 2001 order dismissed Aon Corporation with prejudice and without costs, 
nunc
 
pro
 
tunc
, as of November 28, 2000.  Aon Defendants appealed.

On March 6, 2003, this court affirmed the judgment of the circuit court, and found, 
inter
 
alia
, that the trial was conducted fairly and properly and that Aon Defendants had waived and were estopped from any attempt to draw a distinction between their two corporate entities in order to create a procedural advantage.  
Anderson v. Alberto-Culver USA, Inc.
, 337 Ill. App. 3d 643, 661, 668, 789 N.E.2d 304 (2003).

In a related action pertinent to the instant appeals, the Alberto Insurers filed a complaint for declaratory judgment and at law against Aon Defendants, USAU and USAIG on January 16, 1997, seeking to recover the $28 million they paid to Alberto for loss of the aircraft.
(footnote: 5)  No recovery was sought from the Municipalities in this action. 

Aon Defendants filed a counterclaim against the Alberto Insurers and Alberto, seeking a declaration that Aon Defendants were entitled to coverage under Alberto's insurance policy, including indemnity of the declaratory judgment action.  The Alberto Insurers responded to the counterclaim, but did not initiate a third party claim against the Municipalities. 

On January 12, 2001, prior to the wrongful death jury verdict, Timothy McSwain, a USAU representative, faxed a letter he received from AAU Senior Vice President Sharon Holahan to Raymond I. Skilling of Aon Corporation.  Holahan noted an existing question of whether USAU was the primary or excess insurer of Aon Defendants and disputed Aon Defendants' argument that AAU is their primary insurer. 

On January 24, 2001, following the rendering of the wrongful death jury verdict, a correspondence from Holahan to McSwain stated that AAU agreed to accept $6 million as settlement of the AAU/Alberto hull subrogation claim.  Holahan also noted, "[t]his settlement will be final as to the hull only and the amount stated as a percentage or otherwise will have no bearing on other pending actions arising out of this accident.  If this amount to be paid is accepted by your company, there will not be any reimbursement by AAU/Alberto Culver for amounts recovered from other parties including the municipality."  USAU accepted AAU's January 24, 2001 offer and agreed that it and USAIG would pay $4 million and that Aon Defendants would contribute $2 million for the settlement. 

On June 8, 2001, AAU and Alberto executed a "Full Release and Settlement Agreement" for the aircraft hull claim in accord with the settlement agreement previously reached between the parties.  Aon Defendants and USAU, however, failed to pay the agreed settlement funds and, thereafter, AAU and Alberto moved to enforce the terms of the aircraft hull settlement. 

On August 14, 2001, Aon Defendants moved for a good-faith finding and dismissal of the settlement agreement in order to extinguish any contribution claims under the Contribution Act.  Aon Defendants also pleaded that a good-faith finding be extended to their insurers, USAU and USAIG.  In addition, Aon Defendants moved to enforce the aircraft hull settlement pursuant to a March 21, 2001 release, alleging that they did not have an opportunity to provide their objections to AAU's proposed release. 

On August 20, 2001, the Municipalities filed an emergency petition to intervene for the sole purpose of objecting to Aon Defendants' motion for a good-faith finding, claiming that an August 16, 2001 facsimile of an amended notice of motion for good-faith finding and dismissal from Aon Defendants was the first attempted service of any notice with respect to the declaratory judgment action.  The circuit court granted the Municipalities' petition.  In support of their exception to Aon Defendants' motion for good-faith finding and dismissal, the Municipalities argued that (1) the court had no basis upon which to find that the settling parties reached an agreement in good-faith because no settlement was presented to the court; and (2) the proposed settlement agreements do not meet the good-faith requirements of the Contribution Act.  The Municipalities also moved for enlargement of time and evidentiary hearing, which the Alberto Insurers and Alberto opposed. 

Following a hearing on October 9, 2001, the circuit court denied the Municipalities' motion for enlargement of time, but allowed an evidentiary hearing to establish the basis for their exceptions to Aon Defendants' motion for a good-faith finding.  The Municipalities filed notices and revised notices to produce pursuant to Supreme Court Rule 237 (166 Ill. 2d R. 237 (Rule 237)), requesting production of persons most knowledgeable of the negotiations leading up to the terms of settlement between the Alberto Insurers, Alberto, Aon Defendants, USAU and USAIG, ownership of the aircraft, responsibility for operation of the aircraft at the time of the accident, the verdict rendered in the wrongful death case, the decisions of Alberto or its insurers to file subrogation claims and numerous documents related to the settlement agreement.  The Municipalities also filed an emergency motion to compel discovery requests.
(footnote: 6)  Alberto and its insurers filed an emergency motion to quash the Municipalities' Rule 237 notices, which the court granted because the Municipalities' requests were "unparticularized and indiscreet."  The Municipalities filed a second, revised notice to produce at the evidentiary hearing, which no party sought to quash. 

On November 5, 2001, the Alberto Insurers, Alberto, Aon Defendants, USAU and USAIG executed the Settlement, which required Aon Defendants to pay AAU $2 million and USAU and USAIG to pay AAU $4 million.  The Settlement released Aon Defendants, USAU and USAIG from "any liability, claims, demands, actions or causes of action relating to" the destroyed Alberto GIV as set forth in count I of AAU's third amended complaint in the declaratory judgment action.
(footnote: 7) 

Following an evidentiary hearing on Aon Defendants' amended motion for good-faith finding and dismissal, the circuit court granted the motion and found that the Settlement was made in good-faith, thereby extinguishing any contribution liability of Aon Defendants for the matters released.
(footnote: 8)  The court also ordered that count I of AAU's fourth amended complaint against Aon Defendants be dismissed with prejudice, but that the declaratory judgment and subrogation action as to all other counts were not dismissed.  In addition, the court included language in its order pursuant to Supreme Court Rule 304 (155 Ill. 2d R. 304).  The Municipalities appeal the court's decision to grant Aon Defendants' motion for good-faith finding and dismissal.

Docket Number 1-02-2831 Appeal

In another cause of action pertinent to these appeals, the Alberto Insurers filed a subrogation action against the Municipalities, seeking $28 million for the loss of the aircraft.  The August 16, 2000 subrogation complaint did not include Aon Defendants as a party.  The Municipalities sought leave to file a third-party complaint against Aon Defendants and Alberto for contribution, alleging that they are liable for all or part of the Alberto Insurers' claims against the Municipalities.

On January 29, 2002, Aon Defendants moved to dismiss the Municipalities' third-party complaint, alleging that any possible contribution liability to the Municipalities for AAU's hull loss claim was extinguished by the November 20, 2001 circuit court order granting Aon Defendants' motion for a good-faith finding.  In response to Aon Defendants' motion, the Municipalities stated that they adopted and incorporated all arguments presented before the circuit court in the pending appeal of the good-faith order and, therefore, Aon Defendants' motion to dismiss was not ripe for decision.   

On August 6, 2002, the Municipalities moved to stay the subrogation proceedings pending appeal of the good-faith finding.  The Municipalities argued that reversal of the circuit court's good-faith finding would render Aon Defendants' motion to dismiss as moot. 

On August 13, 2002, the circuit court denied the Municipalities' motion to stay and simultaneously granted Aon Defendants' motion to dismiss the Municipalities' third-party complaint.  The Municipalities timely appeal the court's August 13, 2002 order denying their motion to stay the subrogation proceedings pending appeal of the good-faith finding. 

Docket Number 1-02-2797 Appeal

In filing their section 2-1401 motion, the Municipalities argued that, had the circuit court known certain recently discovered facts at the time of the November 20, 2001 evidentiary hearing, it would have denied Aon Defendants' motion for a good-faith finding.  The Municipalities first claimed an admission made by the Alberto Insurers in the good-faith appeal that the Settlement would have been in the amount of $12 million instead of $6 million if it were limited solely to tort considerations, was new evidence.  Aon Defendants were not aware of the facts disclosed by the Alberto Insurers as set forth in their response brief from the good-faith appeal.  The Municipalities also noted an August 6, 2002 order entered by the circuit court, which granted summary judgment in favor of USAU and found that "AAU's policy provides Aon Aviation, Inc. primary coverage relating to the damages and claims plead herein."  The Municipalities argued that, as a matter of fact and law, AAU was the insurer of Aon Defendants when it sued Aon Defendants for declaratory judgment, subrogation and when the Settlement was executed.  The Municipalities contended that an insurer should not be allowed to deny coverage to the more culpable of the two co-insureds and then subrogate and enter into a reduced settlement agreement with the more culpable co-insured to protect that co-insured from a contribution claim by a third-party.  The Municipalities appeal the denial of their section 2-1401 motion. 

Prior to addressing the merits of the instant appeals, Aon Defendants', the Alberto Insurers' and Alberto's (collectively movants) motion to strike the Municipalities' statement of facts in their amended brief from the good-faith appeal will be addressed.  Supreme Court Rule 341(e)(6) (188 Ill. 2d 341(e)(6) (Rule 341(e)(6))) provides that the statement of facts be stated "accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal."  Movants assert that the Municipalities' statement of facts are highly argumentative, listing numerous examples of improper comments.  A review of the Municipalities' statement of facts shows that it is highly argumentative, conclusional and, in numerous instances, states propositions of fact unsupported by the record.  Specifically, the Municipalities' principal brief lists bullet points as "facts," but are filled with argument and legal conclusions.  Nevertheless, we elect to deny movants' motion to strike and admonish the parties to read and follow Rule 341(e)(6) in future appeals. 

The Municipalities initially assert that the circuit court erred by finding that the Settlement was executed in good-faith, because 
the uncontroverted evidence reveals that the Settlement was manufactured specifically to burden a nonsettling party with a disproportionate allocation of liability.  The Municipalities do not seek to have the Settlement invalidated; rather, they argue for reversal only of the good-faith finding so that the Settlement will remain in effect, thereby allowing them to seek contribution from Aon Defendants.  According to the Municipalities, reversal of the court’s decision would fulfill the goals of the Contribution Act
 because the amount they may recover from Aon Defendants potentially would provide for an equitable distribution among tortfeasors. 
 

Aon Defendants respond that the Municipalities have failed to prove by a preponderance of the evidence that the Settlement was not made in good-faith and that the record is devoid of evidence demonstrating tortious or wrongful conduct amounting to fraud or collusion by Aon Defendants.  The Alberto Insurers and Alberto respond that the Municipalities failed to provide any evidence that the Settlement was not made in good-faith and, therefore, the circuit court properly granted Aon Defendants' motion.

The determination that a settlement was executed in good-faith will not be disturbed on appeal absent an abuse of discretion.  
McDermott v. Metropolitan Sanitary District
, 240 Ill. App. 3d 1, 44, 607 N.E.2d 1271 (1992).  The Contribution Act provides a right of contribution "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death," although judgment has not been entered against any or all tortfeasors.  740 ILCS 100/2(a) (West 2002).  "The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share.  No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability."  740 ILCS 100/2(b) (West 2002).  The pro rata share of each tortfeasor is determined by his relative culpability.  740 ILCS 100/3 (West 2002).  Pertinent to the present case, the Contribution Act states:

"[w]hen a release or covenant not to sue or not to enforce judgment is given in good-faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater."  740 ILCS 100/2(c) (West 2002).

Although the Municipalities argue that the Settlement fails to satisfy four factors establishing whether a settlement was made in good-faith, as articulated in 
Wreglesworth v. Arctco, Inc.
, 317 Ill. App. 3d 628, 634, 740 N.E.2d 444 (2000), the recent supreme court decision, 
Johnson v. United Airlines
, 203 Ill. 2d 121, 133, 784 N.E.2d 812 (2003) (
Johnson
)
, is determinative of the outcome in the present case without necessitating application of these factors.  

In 
Johnson
, which involved the collision of two aircrafts on the runways of an airport owned and operated by the city of Quincy (Quincy), the supreme court reviewed the claim of Raytheon Aircraft Company (Raytheon), which argued that the circuit court abused its discretion when it refused to allow discovery or conduct an evidentiary hearing with respect to Quincy's relative culpability before deciding that a settlement agreement entered into by the administrators of decedents' estates and Quincy was made in good-faith.  Upon belief that it was immune from all tort liability
, Quincy maintained it nevertheless agreed to settle with decedents' estates for a nominal amount to avoid the time and expense of additional litigation.  Raytheon contended that, where the amount tendered in a settlement is nominal, resulting in a gross disparity between the settlement amount and claimed damages, a nonsettling party should be allowed to show that the settlement amount bears no reasonable relationship to the settling party's relative culpability. 

The supreme court held that settling parties carry the initial burden of making a preliminary showing of good-faith by establishing, at a minimum, the existence of a legally valid settlement agreement.  The court noted, however, that not all legally valid settlements satisfy the good-faith requirements of the Contribution Act, citing
 
Stickler v. American Augers, Inc.
, 325 Ill. App. 3d 506, 511, 757 N.E.2d 573 (2001)
 (
Stickler
).  Upon a preliminary showing of good-faith by the settling parties, the party challenging the settlement must prove the absence of good-faith by a preponderance of the evidence.  
Johnson
, 203 Ill. 2d at 132.  The determination of whether a settlement has been executed in good-faith must strike a balance between public policies promoting the encouragement of settlements and the equitable apportionment of damages among tortfeasors.  
Johnson
, 203 Ill. 2d at 133; 
Dubina v. Mesirow Realty Development, Inc.
, 197 Ill. 2d 185, 193-94, 756 N.E.2d 836 (2001) (
Dubina
).  The court emphasized that a settlement agreement will not satisfy the good-faith requirement "if it conflicts with the terms of the [Contribution] Act or is inconsistent with the policies underlying the [Contribution] Act," based on the totality of the circumstances.  
Johnson
, 203 Ill. 2d at 134; 
Ballweg v. City of Springfield
, 114 Ill. 2d 107, 122-23, 499 N.E.2d 1373 (1986). 

In accordance with the Contribution Act, the 
Johnson
 court noted, "[t]he amount of a settlement must be viewed in relation to the probability of recovery, the defenses raised, and the settling party's potential legal liability."  203 Ill. 2d at 137.  Quincy claimed absolute immunity under the Tort Immunity Act and Raytheon did not deny that, if Quincy were immune from liability, its third-party contribution claims would be barred.  Decedents' estates 
never sued Quincy directly because of the diminished likelihood of success.  As a result, no evidence was offered demonstrating that the settlement was motivated by a desire to impede a legitimate claim for contribution.  The supreme court could not conclude that the nominal amount of the settlement and the resulting advantage for Quincy indicated the presence of bad faith and held that the settlement fell short of collusion or wrongdoing.  
Johnson
, 203 Ill. 2d at 138-39.

Here, the Settlement involves two of the three named tortfeasors and their insurers, rather than an agreement between plaintiffs and certain tortfeasors as in 
Johnson
 and other authority analyzing the underlying policies of the Contribution Act.  See 
Dubina
, 197 Ill. 2d at 195-97 (settlement agreement of a tort action for property damage was contrary to the terms of the Contribution Act where plaintiffs, as a condition of the agreement, assigned their causes of action to a group of settling defendants, thereby depriving a nonsettling defendant of its statutory right to a setoff); 
In re Guardianship of Babb
, 162 Ill. 2d 153, 172, 642 N.E.2d 1195 (1994) (
Babb
) (loan-receipt agreements violated the Contribution Act as collusive because they allowed a settling tortfeasor to recover contribution from another tortfeasor whose liability was not extinguished by the settlement, and attempted to deprive nonsettling tortfeasors of their right to a setoff, which protects nonsettling defendants from paying more than their 
pro
 
rata
 share of the final damage judgment).

The Contribution Act provides that "[a]nyone who, by payment has discharged in full or in part the liability of a tortfeasor and has thereby discharged in full his obligation to the tortfeasor, is subrogated to the tortfeasor's right of contribution."  740 ILCS 100/2(f) (West 2002).  Accordingly, AAU, as subrogee, has stepped into the shoes of Alberto, the subrogor, for the purpose of recovering contribution from the remaining tortfeasors for the $28 million it paid to Alberto for the hull loss.  See 
Dix Mutual Insurance Co. v. LaFramboise
, 149 Ill. 2d 314, 319, 597 N.E.2d 622 (1992) (
Dix Mutual Insurance
); 
Gable v. Reznick
, 183 Ill. App. 3d 171, 173, 538 N.E.2d 1325 (1989).

Significantly, at the time of the settlement, AAU knew by virtue of its policy covering Alberto, as well as the Interchange Agreement, that potentially AAU also could be found Aon's primary insurer, as the circuit court later found.  Any payments AAU made on Aon's behalf as its primary insurer, therefore, converted AAU  into Aon's subrogee, as well.

Here, unlike 
Johnson
, the legal liability of a settling party, Aon Defendants, was determined by a trier of fact prior to the execution of the Settlement.  As noted earlier in this opinion, although Aon Defendants were found 90% liable for the accident in the wrongful death case brought by the Whitener estate, Aon Defendants in the present case effectively were released from any contribution liability for the loss of the aircraft by virtue of the good-faith finding.  Nevertheless, AAU continues to pursue the Municipalities by seeking recoupment of the $28 million hull loss in its subrogation action.  

Although nonsettling defendants in a contribution setting may not be parties to the settlements entered into by the settling tortfeasors, they may possess rights that are affected by those settlements.  
Bowers v. Murphy & Miller, Inc.
, 272 Ill. App. 3d 606, 610, 650 N.E.2d 608 (1995).  An agreement cannot be construed as a good-faith settlement under the Contribution Act if the effect of the settlement shifts a disproportionally large and inequitable portion of the settling defendant's liability onto the shoulders of another.  
Stickler
, 325 Ill. App. 3d at 512.  

In the case 
sub
 
judice
, considering Aon Defendants' 90% liability as found by a trier of fact, the disparity between the settlement amount and claimed damages, under the circumstances presented in this case, is a clear indication that the Settlement was not executed in good-faith.  The nature of the Settlement and the settling parties' actions demonstrate the settling parties' motivation to impede the Municipalities' claim for contribution from Aon Defendants.  At the time that AAU settled with Aon Defendants, AAU recognized that Aon Defendants and their insurers sought a ruling that Aon Defendants were insureds of AAU.  The $2 million payment from Aon Defendants, who eventually were found to be insureds of AAU and the $4 million payment from Aon Defendants' insurers, in effect, amounts to a setoff that could prove to be a potential windfall pending AAU's success in its subrogation action against the Municipalities.  Such a result violates the policy of the Contribution Act requiring the equitable apportionment of damages among tortfeasors.  AAU additionally benefitted from the Settlement because 
it collected its payment from Aon Defendants although an insurer may not pursue subrogation against its own insured.  See 
Dix Mutual Insurance
, 149 Ill. 2d at 323. 
 

As a result of the good-faith finding, the Municipalities, who had no notice of AAU's declaratory judgment action against Aon Defendants, are liable potentially for the entire $28 million representing the cost of the aircraft because  Aon Defendants were released from liability for the loss of the aircraft.  
AAU's failure to give notice of the declaratory judgment action or the Settlement to the Municipalities and its fortuitous concealment of the existence of its subrogation claim against the Municipalities from Aon Defendants
 
has allowed it to fashion separate litigation strategies on an identical claim in two separate courtrooms without the fear of adverse admissions affecting the other case.
 
 The Settlement has allowed AAU to manipulate the settlement process by minimizing its exposure as a prospective indemnitor of Aon Defendants.

The totality of the foregoing circumstances illustrate a concert of action by the settling parties that deprived the Municipalities of their rights under the Contribution Act by causing them to pay a potentially higher amount than their 
pro
 
rata
 share, while minimizing the Alberto Insurers' exposure for indemnification of the aircraft's value.  
Further, Aon Defendants' settlement payment was grossly disproportionate to their relative liability, in conflict with the policy of the Contribution Act
.
  
Dubina
, 197 Ill. 2d at 196; 
Babb
, 
162 Ill. 2d at 172.
  Accordingly, the circuit court abused its discretion by granting Aon Defendants' motion for good-faith finding and dismissal
.
  

The above findings also are outcome determinative of the appeals in docket numbers 1-02-2797 and 1-02-2831 because, in effect, they grant the Municipalities the relief requested in both their section 2-1401 motion and motion to stay.  Reversal of the circuit court's good-faith finding requires the unresolved cases enumerated above to return to the same status prior to the court's grant of Aon Defendants' motion for good-faith finding and the denial of the Municipalities' motion to stay.  The court also must vacate its order granting Aon Defendants' motion to dismiss the Municipalities' third-party complaint.  Based upon the foregoing, the issues raised in docket number 1-02-2797 and 1-02-2831 need not be addressed further here.

Accordingly, the decisions of the circuit court of Cook County to grant Aon Defendants' motion for good-faith finding and dismissal, deny the Municipalities' motion for relief from judgment under Code section 2-1401 and deny the Municipalities' motion to stay the subrogation proceedings pending the outcome of the good-faith appeal are reversed and the cause remanded for further proceedings not inconsistent with the conclusions set forth above.

Reversed and remanded with directions.

THEIS, P.J., and GREIMAN, J., concur.

FOOTNOTES
1:
In addition to the policy, before the accident the two settling parties had entered into a hold harmless and indemnity agreement which would have caused the same effect, called the "Interchange Agreement."

2:
On October 24, 2002, appellants' motion to consolidate the appeals was granted, but for hearing only.  After further review and upon this court's own motion, however, the cases now are consolidated for disposition.

3:
On November 2, 1996, the Alberto Insurers, AAU and the separate insurers, paid Alberto $28 million for the destroyed aircraft, which represented the agreed insured value under the AAU insurance policy. 

4:
The August 6, 2002 order made this finding based upon its analysis of AAU's policy.

5:
The Alberto Insurers' third amended complaint included Alberto as a plaintiff and eliminated Aon Defendants' insurers, USAU and USAIG as defendants.  The fourth amended complaint, however, listed USAU as an intervening party (USAU alleged that Aon Defendants are insureds of AAU in their petition to intervene) and alleged the following: in count I, subrogation against Aon Aviation in the amount of $28 million; count II, a declaratory judgment finding no insurance coverage in the underlying wrongful death lawsuits against Aon Corporation; in count III, a declaratory judgment that Aon Corporation was not a permissive user of the Alberto aircraft; in count IV, a declaratory judgment that Aon Defendants are not the insured of AAU; and in count V, a declaratory judgment that Aon Aviation waived its right to seek coverage under the AAU policy issued to Alberto pursuant to the Interchange Agreement. 

6:
All parties responded partially to the Municipalities' motion to compel and, in particular, the Municipalities were satisfied with Aon Defendants' response. 

7:
The Settlement does not "bar, preclude, waive, or prevent any additional claims, demands, defenses or causes of action that Releasors [Alberto Insurers and Alberto] have against the Released Parties [Aon Defendants, USAU and USAIG] or any unnamed individuals or entities for damages other than those specifically released by this agreement and Releasors specifically reserve all claims, defenses, demands or causes of action Releasors have, if any, against the following, but not limited to" the wrongful death lawsuits, declaratory judgment action and the Municipalities as set forth in the subrogation action that AAU filed against the Municipalities. 

8:
In granting Aon Defendants' motion, the circuit court stated:

"Aon is the only one that has an interest in a good-faith finding.  A good-faith finding is not a condition of the settlement agreement, as the record indicates, between Aon and Alberto.  I think stripped to its bare essentials, the contractual claims between the various insurers and Aon and Alberto has nothing at all to do with the hull damage claim that Alberto is making against Aon.  I view this as a prosaic tort claim.  I understand the conspiracy theory that the interveners are urging, but I find it unpersuasive.  Accordingly, I will enter a good-faith finding."